## POPE *v.* WILLIAMS.

ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 503.  Argued March 8, 9, 1904.—Decided April 4, 1904.

While the privilege to vote may not be abridged by a State on account of race, color and previous condition of servitude, the privilege is not given by the Federal Constitution or by any of its amendments nor is it a privilege springing from citizenship of the United States. *Minor* v. *Happersett,* 21 Wall. 162.

While the right to vote for members of Congress is not derived exclusively from the law of the State in which they are chosen but has its foundation in the Constitution and laws of the United States, the elector must be one entitled to vote under the state stutute.

An act of the legislature of a State providing that all persons who shall thereafter remove into the State from any other State, District or Territory, shall make declaration of their intent to become citizens and residents of the State a year before they have the right to be registered as voters, is not violative of the Federal Constitution as against a citizen of another State moving into the enacting State after the passage of the act.

THIS is a writ of error to the Court of Appeals of the State of Maryland, to review its judgment affirming that of the Circuit Court for Montgomery County, which affirmed the proceedings of the board of registry of election district No. 7 of that county,

refusing to register petitioner as a legal voter on the ground of his non-compliance with the Maryland law making it necessary for a person coming into the State, with the intention of residing therein, to register his name with the clerk of the Circuit Court of the proper county, and thereby to indicate the intent of such person to become a citizen and resident of the State.

The act in question was passed March 29, 1902, as chapter 133 of the laws of that year, and as an amendment and supplement to the Public General Laws of the State, title "Elections," sub-title "Registration," as section 25B, and it is reproduced in the margin.[1]

Plaintiff in error on September 29, 1903, presented his ap-

---

[1] SEC. 25B. All persons who, after the passage of this act shall remove into any county of this State, or into the city of Baltimore from any other State, District or Territory, shall indicate their intent to become citizens and residents of this State by registering their names in a suitable record book, to be procured and kept for the purpose by the clerk of the Circuit Court for the several counties, and by the clerk of the Superior Court of Baltimore City; such record to contain their names, residence, age and occupation; and the intent of such persons to become citizens and residents of this State shall date from the day on which such registry shall be so entered in such record book by the clerk of the Circuit Court for the county, or of the Superior Court of Baltimore City, as the case may be, into which county or city such person shall so remove from any other State, District or Territory. And no person coming into this State from any other State, District or Territory shall be entitled to registration as a legal voter of this State until one year after his intent to become such legal voter shall be thus evidenced by such entry in such record book, and such entry or a duly certified copy thereof shall be the only competent and admissible evidence of such intent. And the clerk of the Superior Court of Baltimore City and the several courts of the several counties shall immediately, upon the passage of this act, procure a suitable record book for the recording therein of such entries arranged alphabetically under the names of such persons. For every person so registered under the provisions of this section they shall be entitled to demand and receive the sum of twenty-five cents, to be paid to said clerks by the mayor and city council of Baltimore and the county commissioners respectively. A copy of such record, duly certified by said clerks, shall be evidence of the right of such persons to registration as legal voters according to law, and each person so registered shall be entitled to such certified copy upon demand without charge.

plication to the board of registry of election district No. 7, Montgomery County, Maryland, then sitting at a place within such district, to be registered and entered as a qualified voter on the registry of voters of that election district, which application the board refused and declined to comply with, for the sole reason that he had not complied with this law of Maryland. Thereafter the plaintiff presented a sworn petition to the Circuit Court for Montgomery County, in the State of Maryland, praying that court to enter an order to revise the action of the board of registry, and to order and direct that the name of the petitioner should be entered as a qualified voter on the registry of voters of the election district already named. In that sworn petition he alleged that he had on June 7, 1902, with his wife and child, removed from the city of Washington, District of Columbia, into Montgomery County, in the State of Maryland, "having then had and ever since and now having the intention of making the State of Maryland the permanent domicil of himself and his family, and of becoming a citizen of said State; and ever since said June 7, 1902, petitioner has resided in the subdivision of Otterbourne, near Chevy Chase, in said Montgomery County, and in the seventh election district of said county."

The petitioner further showed in his petition that he had made application to the proper board of registry in the election district mentioned, and the board had refused to enter his name as a qualified voter on the ground already stated, of non-compliance with the Maryland statute.

The petitioner admitted "that he did not within a year prior to said application for registration as a qualified voter, or at any time during the year 1902, in any manner, make or register, in the office of or before the clerk of Montgomery County, Maryland, or in a record book kept by said clerk, a declaration of intention to become a citizen and resident of Maryland, such as is required by the aforesaid law to be made by persons who remove into the State of Maryland after March 29, 1902, as a condition precedent to subsequent regis-

tration of such persons as qualified voters. Petitioner, how-
ever, claims and asserts that said section 25B of article 33 of
the Code of Public General Laws of Maryland affords no
justification for said refusal to register your petitioner as a
qualified voter, because said alleged law contravenes and is
repugnant to the Constitution of the United States and the
constitution of Maryland, and is, therefore, null and void."

The petitioner then asserts and sets forth in his petition
several grounds which, as he therein alleges, render the state
law a violation of the constitution of the State of Maryland,
and he also specially sets up and claims that the law is a viola-
tion of the Constitution of the United States in the particulars
named by him, and which are as follows:

"Said law is repugnant to that portion of section 1 of the
Fourteenth Amendment of the Constitution of the United
States, which declares that 'all persons born or naturalized in
the United States, and subject to the jurisdiction thereof, are
citizens of the United States and of the State wherein they
reside,' because by said law it is in effect ordained that male
citizens of the United States of the age of twenty-one years
and upwards, removing into the State of Maryland after
March 29, 1902, with the intention of making said State their
permanent domicil, shall not be treated as citizens or residents
of Maryland, or given the rights and privileges of citizens of
Maryland, until they have been naturalized in the mode pre-
scribed by said law.

"Said law is also repugnant to that portion of section 1 of
said Fourteenth Amendment to the Constitution of the United
States which prohibits a State from denying any person within
its jurisdiction the equal protection of the laws, because said
law operates an unjust and unreasonable discrimination against
citizens of the United States coming into the State of Mary-
land to permanently reside therein after March 29, 1902, who
may desire to become qualified voters therein.

"Said law is also repugnant to the general spirit of the
Constitution of the United States and the fundamental rights

of citizens of the United States, which deny to a State the power to attach unreasonable or burdensome conditions to the free movement of citizens of the United States out of, into and settlement within the confines of any State, District or Territory within the United States."

To this petition there was a general demurrer, which was sustained by the court, which thereupon entered judgment dismissing the petition with costs to the defendants.

*Mr. William H. Pope*, plaintiff in error, *pro se:*

The deprivation of a political right or privilege dependent upon a state constitution, if such deprivation be grounded upon an abridgement of a right or privilege conferred by the Constitution of the United States, presents a Federal question entitling this court to review the judgment of a state court. *Boyd* v. *Thayer*, 143 U. S. 135.

State citizenship is a right, privilege or immunity of a citizen of the United States. § 1, Fourteenth Amendment; *Slaughter House Cases*, 16 Wall. 36, 80. By the express terms of the Fourteenth Amendment, a State may not abridge the same.

The first sentence of the Fourteenth Amendment is in effect a national naturalization law; and the acquisition of United States and state citizenship is solely regulated by it. The common law and general law of evidence in force at the time of the adoption of the Amendment determine what is residence and how it may be acquired. *United States* v. *Wong Kim Ark*, 169 U. S. 654; *United States* v. *Palmer*, 3 Wheat. 630; *United States* v. *King*, 34 Fed. Rep. 306.

Section 1, Art. I, of the constitution of Maryland confers the voting franchise upon adult male citizens of the United States who have resided in the State one year. The general assembly of Maryland cannot add to these qualifications. *Souther-land* v. *Norris*, 74 Maryland, 326. The term "resident," as employed in the clause of the state constitution referred to is synonymous with "citizen." Art. 7, Maryland Bill of Rights: *Anderson* v. *Watt*, 138 U. S. 702.

It is a privilege of a citizen of the United States, of his own volition, instantly to transfer his citizenship from one State to another. *Morris* v. *Gilmer*, 129 U. S. 315; *Slaughter House Cases, supra.* Unlike citizenship of the United States, (in the case of a foreign born person,) no "declaration of intention" is required.

The Federal privilege of state citizenship acquired by plaintiff in error on his removal into Maryland was clearly abridged by the statute here assailed, which operates only against persons, *after their removal into the State of Maryland*, when, by force of the Constitution of the United States, many such persons immediately on removal become residents of the State of Maryland. ' The statute dates the residence and citizenship *from the time of the making of the declaration of intention required by the statute*, thus in effect annulling the residence and citizenship acquired by force of the Constitution of the United States, and compelling the acceptance of citizenship under the state law. Further, the requirement of attendance at the county seat to make the declaration in question—no matter how far removed from the residence of the would-be-voter, or how great may be the pecuniary injury sustained by loss of time and money, outlay for railroad fares, etc.—is an oppressive and onerous burden, not imposed upon other citizens of the State. It deters and hinders citizens from establishing and exercising such right. See No. 61 of The Federalist, by Alexander Hamilton, p. 281. The statute necessarily abridges the Federal right and privilege, and is therefore unconstitutional. *Crandall* v. *Nevada*, 6 Wall. 36; *Henderson* v. *Mayor*, 92 U. S. 268; *Vance* v. *W. A. Vandercook Co.*, 170 U. S. 438; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 558.

The declaration of intention required by the Maryland law is a condition and qualification for the acquisition of the right to vote, and not a mere rule of proof. § 2165, Rev. Stat.; *Vance* v. *W. A. Vandercook Co.*, 170 U. S. 438, 455; *Sinnot* v. *Davenport*, 22 How. 227, 241.

It is immaterial to the right of the plaintiff in error to claim

the benefit of the Federal privilege that the statute was enacted before his removal into the State. *Southern Pacific Co.* v. *Denton,* 146 U. S. 207, and cases cited.

. On the transfer of residence from one State to another a citizen of the United States is vested "with the same rights as other citizens of that State." *Slaughter House Cases, supra.* This necessarily includes the right not to be arbitrarily discriminated against in the acquisition and enjoyment of political rights, because of his removal from another State. The statute may, therefore, properly be held also to be repugnant to the second section of the fourth article of the Constitution of the United States. *Blake* v. *McClung,* 172 U. S. 249.

*Mr. John Prentiss Poe,* with whom *Mr. Bowie F. Waters* was on the brief, for defendant in error:

So far as the act is claimed to be contrary to the constitution of the State the question is finally set at rest by the decision of the Court of Appeals and that question is not subject to review by this court.

It has long been an established doctrine of this court that the construction by the courts of the several States of their constitution and laws is binding upon this court in all cases except where a Federal question is involved. Guthrie on 14th Amendment, 44; Brannon on 14th Amendment, 395, 419; *Slaughter House Cases,* 16 Wall. 66; *Louisiana* v. *Pilsbury,* 105 U. S. 294; *Gibson* v. *Mississippi,* 162 U. S. 582; *Forsyth* v. *Hammond,* 166 U. S. 519, and cases cited.

The writ of error should be dismissed because it is no longer within the power of the defendants to register the plaintiff, as the registration books are not now and never will or can be in their possession or custody or subject to their control. Maryland Code, Art. 33, §§ 29, 30. The case is now a moot case. *Mills* v. *Green,* 159 U. S. 653; *Schilling* v. *Summerson,* 94 Maryland, 582, 591.

The act does not affect or impair any fundamental and

inalienable rights "of the plaintiff as a citizen of the United States secured or guaranteed to him by that Amendment."

Residence in its legal sense is made up of two distinct elements: *first,* the physical, tangible fact of removal into the State; and *second,* the *quo animo* or intent with which such removal is made. *Mitchell* v. *United States,* 21 Wall. 350.

As to how to prove that a resident is entitled to vote, see *Fenwick* v. *State,* 63 Maryland, 241; *Fisk* v. *Chester,* 8 Gray, 508; Cooley's Const. Law (7th ed. 1903), 524; 11 Am. & Eng. Ency. of Law (2d ed.), title Evidence, page 550, and cases there cited; 6 Am. & Eng. Ency. of Law (2d ed.), title Constitutional Law, page 950, and cases there cited.

The Court of Appeals have decided in several cases that legislation of this sort relating to persons abandoning their homes in Maryland and removing from the State into other States, is constitutional and valid. Act of 1890, ch. 573, sec. 14; Act of 1901, ch. 2; Code, Art. 33, title Elections, § 25a; *Shaeffer* v. *Gilbert,* 73 Maryland, 70, 72; *Southerland* v. *Norris,* 74 Maryland, 326; *Sterling* v. *Horner,* 74 Maryland, 573; *McLane* v. *Hobbs,* 74 Maryland, 166; *Bowling* v. *Turner,* 78 Maryland, 595; *Thomas* v. *Warner,* 83 Maryland, 20; *Howard* v. *Skinner,* 87 Maryland, 559.

By their judgment in the present case they have decided that this section 25b is nothing but a lawful regulation of the evidence necessary to prove what constitutes "residence."

Citizenship and suffrage are by no means inseparable; the latter is not one of the universal, fundamental, inalienable rights with which men are endowed by their Creator, but is altogether conventional. Suffrage is not a right of property or absolute personal right. *Anderson* v. *Baker,* 23 Maryland, 531, 629; Cooley's Principles of Constitutional Law, 276; *Gougar* v. *Timberlake,* 148 Indiana, 38; Black's Constitutional Law, 466; Story on Constitution, § 581; *Kinneen* v. *Wells,* 144 Massachusetts, 497; *Stone* v. *Smith,* 159 Massachusetts, 413; 16 Alb. Law J. 272; *United States* v. *Susan B. Anthony,* 11 Blatch. C. C. 202; *Van Valkenburg* v. *Brown,* 43 California, 43;

*Minor* v. *Happersett*, 21 Wall. 178; *United States* v. *Reese*, 92 U. S. 214; *United States* v. *Cruikshank*, 92 U. S. 542.

Since the Fifteenth Amendment the whole control over suffrage and the power to regulate its exercise is still left with and retained by the several States, with the single restriction that they must not deny or abridge it on account of race, color or previous condition of servitude. *United States* v. *Harris*, 106 U. S. 636, 644; *James* v. *Bowman*, 190 U. S. 127.

There are, it is true, the two provisions, first, that while "the times, places and manner of holding elections for Senators and Representatives shall be prescribed in each State by the legislature thereof, the Congress may at any time by law make or alter such regulations except as to the places of choosing Senators." Constitution, Art. I, sec. 4; *Ex parte Siebold*, 100 U. S. 371; *Ex parte Clarke*, 100 U. S. 399; *Ex parte Yarbrough*, 110 U. S. 651; *In re Coy*, 127 U. S. 731; *Logan* v. *United States*, 144 U. S. 263.

As § 25B does not conflict with the Fifteenth Amendment but in express terms applies to "*all* persons," it does not impair, abridge, affect, or even touch any privilege or immunity of the plaintiff in error which is covered by the guaranty of the Fourteenth Amendment. *Williams* v. *Mississippi*, 170 U. S. 213; *Gibson* v. *Mississippi*, 162 U. S. 582; *Giles* v. *Harris*, 189 U. S. 475; *James* v. *Bowman*, 190 U. S. 127. And see also *Scott* v. *Sandford*, 19 How. 393; *Ward* v. *Maryland*, 12 Wall. 418; *Neale* v. *Delaware*, 103 U S. 370; *Amy* v. *Smith*, 1 Litt. (Ky.) 326; *Lanz* v. *Randall*, 4 Dill. 425; *Short* v. *State*, 80 Maryland, 401.

The protection designed by the clause of the Fourteenth Amendment declaring that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, as has been repeatedly held, has no application to a citizen of the State whose laws are complained of. *Bradwell* v. *State*, 16 Wall. 130; *In re Taylor*, 48 Maryland, 28; *In re Maddox*, 93 Maryland, 728, 729.

As to the privileges and immunities belonging to the citi-

zens of a State, these "must rest for their security and protection where they have heretofore rested," that is, with the State in which the citizen resides. *Slaughter House Cases,* 16 Wall. 74; *Presser* v. *Illinois,* 116 U. S. 266; *Short* v. *State,* 80 Maryland, 401.

By removing into Maryland the plaintiff became a citizen of that State and voluntarily subjected himself to the operation of her laws. Why then shall he not be bound by them?

As to equal protection of the laws the equality extends only to *civil* rights as distinguished from those that are *political* or arise from the form of the government and its mode of administration. Field, J., *Ex parte Virginia,* 100 U. S. 637. Equal protection of the laws is a pledge of the protection of equal laws. *Yick Wo* v. *Hopkins,* 118 U. S. 369.

The clause is not violated by any diversity in the jurisdiction in the several courts as to subject matter, amount or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right in like cases and under like circumstances to resort to them for redress. *Missouri* v. *Lewis,* 101 U. S. 30; *Wurts* v. *Hoagland,* 114 U. S. 615. Class legislation discriminating against some and favoring others is prohibited, but legislation, which in carrying out a public purpose is limited in its application if within the sphere of its operation it affects alike all persons similarly situated, is not within the Amendment. *Munn* v. *Illinois,* 94 U. S. 134; *Chicago R. R. Co.* v. *Iowa,* 94 U. S. 163; *Barbier* v. *Connolly,* 113 U. S. 27, 32; *Soon Ling* v. *Crowley,* 113 U. S. 703; *Missouri Pacific R. R. Co.* v. *Humes,* 115 U. S. 523; *Kentucky R. R. Tax Case,* 115 U. S. 337; *Presser* v. *Illinois,* 116 U. S. 266; *Hayes* v. *Missouri,* 120 U. S. 71; *Dow* v. *Biedelman,* 125 U. S. 691; *Missouri R. R. Co.* v. *Mackey,* 127 U. S. 209; *Powell* v. *Pennsylvania,* 127 U. S. 687; *Walston* v. *Nevin,* 128 U. S. 582; *Minnesota R. R. Co.* v. *Beckwith,* 129 U. S. 29; *Home Ins. Co.* v. *New York,* 134 U. S. 606; *Marchant* v. *Pennsylvania R. W.,* 153 U. S. 389; *St. L. & San Fran. Ry.* v. *Mathews,* 165 U. S. 24; *Gulf, C. & S. F. R. W.* v. *Ellis,* 165 U. S. 155; *Orient Ins.*

*Co.* v. *Daggs,* 172. U. S. 557; *Ins. Co.* v. *Warren,* 181 U. S. 73; *Ins. Co.* v. *Mettler,* 185 U.,S. 308; *Billings* v. *Illinois,* 188 U. S. 97; *Kidd* v. *Alabama,* 188 U. S. 730; *Farmers' Ins. Co.* v. *Dobney,* 189, U. S. 301; *Short* v. *State,* 80 Maryland, 402; Brannon on 14th Amendment, ch. 16; on Equal Protection of the Laws, 315, 380; Guthrie on 14th Amendment, 106, 142.

Tests, qualifications, disqualifications, denials, abridgments, distinctions, inequalities, may still lawfully be made at the pleasure of the States, provided only they do not discriminate against the negro.

If they apply equally, impartially and uniformly to white and black citizens alike, they are not condemned by the letter or the spirit of the Thirteenth, Fourteenth and Fifteenth Amendments.. They may perhaps cost the States a reduction in their Congressional representation in the proportion in which the number of adult males disfranchised by such state legislation bears to the whole number of its adult male population. But this is the only legal consequence, and there is no warrant for the contention that the Federal judiciary can also declare such legislation absolutely void.

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

This is not a case of a statute of the State having been passed subsequently to the time when the individual had removed from another State or from a Territory or from the District of Columbia into the State of Maryland. There is, therefore, no alteration of any possible rights which the. plaintiff in error might have already acquired and which he might. claim were taken from him by the passage of such statute. On the contrary, this statute took effect on March 29, 1902, more than two months prior to the removal of the plaintiff in error from Washington in the District of Columbia to Montgomery County, within the State of Maryand. The objections of a Federal nature, which are made by the plaintiff in error, to the validity of the statute are set out in his petition, and are

also contained in the above statement of facts, and are substantially reproduced in his assignment of errors.

We are of opinion that the statute does not violate any Federal right of the plaintiff in error which he seeks to assert in this proceeding. The statute, so far as it concerns him and the right which he urges, is one making regulations and conditions for the registry of persons for the purpose of voting. It was only for the purpose of thereafter voting that the plaintiff in error sought to be registered, and it was the denial of that right only which he can now review. His application for registry as a voter was denied by the board of registry solely because of his failure to comply with the statute. Whatever other right he may have as a citizen of Maryland by reason of his removal there with an intent to become such citizen, is not now in question. So far as appears no other right, if any he may have, has been infringed by the statute. The simple matter to be herein determined is whether, with reference to the exercise of the privilege of voting in Maryland, the legislature of that State had the legal right to provide that a person coming into the State to reside should make the declaration of intent a year before he should have the right to be registered as a voter of the State.

The privilege to vote in any State is not given by the Federal Constitution, or by any of its amendments. It is not a privilege springing from citizenship of the United States. *Minor* v. *Happersett,* 21 Wall. 162. It may not be refused on account of race, color or previous condition of servitude, but it does not follow from mere citizenship of the United States. In other words, the privilege to vote in a State is within the jurisdiction of the State itself, to be exercised as the State may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals in violation of the Federal Constitution. The State might provide that persons of foreign birth could vote without being naturalized, and, as stated by Mr. Chief Justice Waite in *Minor* v. *Happersett,* *supra,* such persons were allowed to vote in several of the

States upon having declared their intentions to become citizens of the United States. Some States permit women to vote; others refuse them that privilege. A State, so far as the Federal Constitution is concerned, might provide by its own constitution and laws that none but native-born citizens should be permitted to vote, as the Federal Constitution does not confer the right of suffrage upon any one, and the conditions under which that right is to be exercised are matters for the States alone to prescribe, subject to the conditions of the Federal Constitution, already stated; although it may be observed that the right to vote for a member of Congress is not derived exclusively from the state law. See Federal Constitution, Art. 1, sec. 2; *Wiley* v. *Sinkler*, 179 U. S. 58. But the elector must be one entitled to vote under the state statute. (Id., Id.) See also *Swafford* v. *Templeton*, 185 U. S. 487, 491. In this case no question arises as to the right to vote for electors of President and Vice President, and no decision is made thereon. The question whether the conditions prescribed by the State might be regarded by others as reasonable or unreasonable is not a Federal one. We do not wish to be understood, however, as intimating that the condition in this statute is unreasonable or in any way improper.

We are unable to see any violation of the Federal Constitution in the provision of the state statute for the declaration of the intent of a person coming into the State before he can claim the right to be registered as a voter. The statute, so far as it provides conditions precedent to the exercise of the elective franchise within the State, by persons coming therein to reside, (and that is as far as it is necessary to consider it in this case,) is neither an unlawful discrimination against any one in the situation of the plaintiff in error nor does it deny to him the equal protection of the laws, nor is it repugnant to any fundamental or inalienable rights of citizens of the United States, nor a violation of any implied guaranties of the Federal Constitution. The right of a State to legislate upon the subject of the elective franchise as to it may seem good, sub-

ject to the conditions already stated, being, as we believe, unassailable, we think it plain that the statute in question violates no right protected by the Federal Constitution.

The reasons which may have impelled the state legislature to enact the statute in question were matters entirely for its consideration, and this court has no concern with them.

It is unnecessary in this case to assert that under no conceivable state of facts could a state statute in regard to voting be regarded as an infringement upon or a discrimination against the individual rights of a citizen of the United States removing into the State and excluded from voting therein by state legislation. The question might arise if an exclusion from the privilege of voting were founded upon the particular State from which the person came, excluding from that privilege, for instance, a citizen of the United States coming from Georgia and allowing it to a citizen of the United States coming from New York or any other State. In such case an argument might be urged that, under the Fourteenth Amendment of the Federal Constitution, the citizen from Georgia was by the state statute deprived of the equal protection of the laws. Other extreme cases might be suggested. We neither assert nor deny that in the case supposed the claim would be well founded that a Federal right of a citizen of the United States was violated by such legislation; for the question does not arise herein. We do, however, hold that there is nothing in the statute in question which violates the Federal rights of the plaintiff in error by virtue of the provision for making a declaration of his intention to become a citizen before he can have the right to be registered as a voter and to vote in the State.

The plaintiff in error has no ground for complaint in regard to the decision of the courts below, and the judgment of the Court of Appeals of Maryland is, therefore,

*Affirmed.*