**Application of Jose CAMACHO, Plaintiff,**

**v.**

**William T. ROGERS, Attorney General of the United States, Nelson Rockefeller, Governor of the State of New York, Louis J. Lefkowitz, Attorney General of the State of New York, and the Board of Elections of the City of New York, Defendants.**

United States District Court
S. D. New York.

Oct. 19, 1961.

Paul O'Dwyer, New York City (Gene Crescenzi, and Howard N. Meyer, New York City, on brief), for plaintiff.

George C. Mantzoros, Asst. Atty. Gen. of New York (Irving L. Rollins, New York City, of counsel), (Louis J. Lefkowitz, Atty. Gen., Paxton Blair, Sol. Gen., Albany, and George C. Mantzoros, New York City, on brief), for Governor and Atty. Gen. of New York.

Arthur H. Geisler, Asst. Corp. Counsel, New York City, for City of New York (Leo A. Larkin, Corp. Counsel, and Arthur H. Geisler, New York City, on brief), for the Bd. of Elections of City of New York.

Robert J. Ward, Asst. U. S. Atty., S.D. N.Y., New York City (Burke Marshall, Asst. Atty. Gen., and Robert M. Morgenthau, U. S. Atty., S.D.N.Y., New York City, on brief), for U. S., amicus curiae.

Nanette Dembitz, New York City, on brief, for the New York Civil Liberties Union, amicus curiae.

Before LUMBARD, Circuit Judge, and EDELSTEIN and METZNER, District Judges.

METZNER, District Judge.

This is an action for an injunction to enjoin the enforcement of the English language literacy requirement of the Constitution (Art. II, § 1) and the Election Law, McKinney's Consol.Laws, c. 17 (§§ 150, 168 and 201, subd. 1) of the State of New York on the ground that such requirement violates the Constitution of the United States and statutes adopted pursuant thereto and certain treaties entered into by the United States. Plaintiff requested that a three-judge statutory court be convened (28 U.S.C. § 2281), which request was granted by the district court and the matter argued before this court.

■ The original parties defendant were the Attorney General of the United States, the Governor and the Attorney General of the State of New York, and the Board of Elections of the City of New York. In a prior motion the plaintiff consented to a dismissal of the complaint against the Attorney General of the United States. The Governor and the Attorney General of the State of New York also moved for a dismissal, but that matter was held for adjudication by this court. The action insofar as it seeks relief against these officials must also be dismissed because they are not proper parties. Fitts v. McGhee, 1899, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535; Rule

12(b) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.

The complaint alleges that plaintiff is a citizen of the United States, having been born in Puerto Rico, and that he is literate only in Spanish. It was conceded on the argument that he voted in Puerto Rico before coming to New York City, where he is presently a resident. The defendant, Board of Elections of the City of New York, has refused to allow him to register to vote because he is unable to present proof of literacy in English as required and provided for by §§ 150, 168 and 201, subd. 1, of the Election Law. These sections were adopted pursuant to Article II, § 1, of the New York State Constitution, which provides that:

"Notwithstanding the foregoing provisions, after January first, one thousand nine hundred twenty-two, no person shall become entitled to vote by attaining majority, by naturalization or otherwise, unless such person is also able, except for physical disability, to read and write English."

■ Plaintiff predicates his claim to relief on six grounds. First, that pursuant to the Treaty of Paris, 30 Stat. 1754, which ended the hostilities between the United States and Spain, he is a citizen of the United States whose rights shall be those provided for by Congress, and therefore any limiting provision of the Constitution or the Election Law of the State of New York is of no force and effect. Second, that as a citizen of the United States he is being denied the equal protection of the laws, in violation of the Fourteenth Amendment. Third, that in violation of the Fifteenth Amendment he is being denied the right to vote because of his race, being a Puerto Rican of Spanish ancestry. Fourth, that § 1971(a) of Title 42, U.S.C.A., is being violated on the ground that a person is entitled to vote without regard to race, color or previous condition of servitude. Fifth, that the Civil Rights Acts of 1957 and 1960 (42 U.S.C.A. § 1971(c) and (e)) are being violated because a pattern exists denying Puerto Rican-American citizens the right to vote. Sixth that the United Nations Charter and the Declaration of Human Rights are treaty obligations of the United States which are part of the supreme law of the land (Const. Art. VI), and that said treaty is being violated in that the right to vote is a basic human right which the United States is pledged to observe without distinction as to race, sex, language or religion.

The first four grounds for the claim to relief as well as the 1957 Civil Rights Act, embraced in the fifth ground, were raised in an action instituted in 1958 by this plaintiff against the Board of Elections in the Supreme Court of the State of New York. 221 N.Y.S.2d 262, affirmed by the Court of Appeals without opinion, Camacho v. Doe, 1959, 7 N.Y.2d 762, 194 N.Y.S.2d 33, 163 N.E.2d 140. Neither the 1960 Civil Rights Act nor the sixth ground for relief was raised in the state court action.

The defense of res judicata has been raised based on the judgment in the state court action, which was decided adversely to the petitioner. The defense is a valid one and accordingly we dismiss the complaint insofar as the grounds raised in the state court action are concerned. Rooker v. Fidelity Trust Co., 1923, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; New York State Electric & Gas Corp. v. Public Service Commission of New York, 2 Cir., 1939, 102 F.2d 453; Baker Driveaway Co. v. Hamilton, D.C.M.D.Pa.1939, 29 F.Supp. 693; England v. Louisiana State Board of Medical Examiners, D.C. E.D.La.1961, 194 F.Supp. 521.

■ If there are any rights available to plaintiff by virtue of the Civil Rights Act of 1960 (42 U.S.C.A. § 1971(c) and (e)), as contended for in the fifth ground, they must be asserted in the proper judicial district, which is the District of Columbia. We assume that the impropriety of seeking relief in this forum against the Attorney General of the United States is what prompted the consent by the plaintiff to the dismissal of the action against that official in a prior motion in this case.

We come to the sixth ground for relief, which is predicated on the claim that the cited sections of the New York Constitution and the Election Law violate Article 55 of the United Nations Charter, 59 Stat. 1045. That article declares that the United Nations

"shall promote: * * * universal respect for, and observance of, human rights and fundamental freedoms for all without distinction as to race, sex, language, or religion."

Article 56 of the Charter provides a pledge by the member nations to take joint and separate action

"in cooperation with the Organization for the achievement of the purposes set forth in Article 55."

■■ While Article VI of the Constitution provides that treaties are part of the supreme law of the land, they reach that status only if the provisions of the treaty are self-executing. Foster v. Neilson, 1829, 2 Pet. 253, 7 L.Ed. 415; Head Money Cases, 1884, 112 U.S. 580, 598, 5 S.Ct. 247, 28 L.Ed. 798; Valentine v. U. S. ex rel. Neidecker, 1936, 299 U.S. 5, 10, 57 S.Ct. 100, 81 L.Ed. 5. The question of whether Article 55 is self-executing has been fully discussed in Sei Fujii v. State, in banc, 1952, 38 Cal.2d 718, 242 P.2d 617, and as appears there the answer is that it is not. With this conclusion we agree. See also, Rice v. Sioux City Memorial Park, 1953, 245 Iowa 147, 60 N.W.2d 110. Indeed the very wording of Article 55 shows that it is not intended to be self-executing.

■■ Because of the nature of the issue presented, we nevertheless express our views on the merits of the plaintiff's claims foreclosed by the defense of res judicata, as the same undoubtedly will be raised by others similarly situated.

The Treaty of Paris provided that:

"The civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress." 30 Stat. 1759, art. 9.

We think it is clear that this provision applies only to the rights of persons born in and resident of Puerto Rico, and that they are not given rights which they are entitled to exercise in contravention of the valid laws of a state to which they may move from Puerto Rico. They do not acquire a special status which would give them preferential treatment over a resident of a sister state who moves to New York and seeks to vote from his new residence.

■ This brings us then to the nub of this case, which is whether a state may adopt a requirement that in order for a citizen to be eligible to vote he must read and write the English language. The establishment of standards for voting has been recognized as within the power of the states and not subject to federal supervision (Guinn v. U. S., 1915, 238 U.S. 347, 366, 35 S.Ct. 926, 59 L.Ed. 1340), save as such legislation might contravene the Fourteenth and Fifteenth Amendments (Breedlove v. Suttles, 1937, 302 U.S. 277, 58 S.Ct. 205, 82 L.Ed. 252). States are free to establish standards of eligibility to vote which do not contravene a constitutional prohibition. The following state requirements have been held to be constitutionally valid if equally applied to all who reside within the state: absence of criminal conduct, Davis v. Beason, 1890, 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637; residency within the state for a designated period, Pope v. Williams, 1904, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817; successful passing of a literacy test, Lassiter v. Northampton Co. Board of Elections, 1959, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072; Trudeau v. Barnes, 5 Cir., 1933, 65 F.2d 563; Guinn v. U. S., supra; payment of a poll tax, Breedlove v. Suttles, supra.

In the Lassiter case, supra, the court, dealing with the constitutionality of a North Carolina statute requiring ability to read and write any section of the Constitution of North Carolina in the English language, said as follows:

"We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction. Residence re-

quirements, age, previous criminal record (Davis v. Beason, 133 U.S. 333, 345–347 [10 S.Ct. 299, 301–302, 33 L.Ed. 637]) are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters. The ability to read and write likewise has some relation to standards designed to promote intelligent use of the ballot. Literacy and illiteracy are neutral on race, creed, color, and sex, as reports around the world show. Literacy and intelligence are obviously not synonymous. Illiterate people may be intelligent voters. Yet in our society where newspapers, periodicals, books, and other printed matter canvass and debate campaign issues, a State might conclude that only those who are literate should exercise the franchise." [360 U.S. 45, 79 S.Ct. 990.]

█ While this case discussed the provision in the North Carolina statute requiring literacy and ignored the further requirement that it be in the English language, the above quotation is just as apposite for a person literate in a foreign tongue. The plaintiff here is in no different position than children born in the United States and taken from the country at any early age who return after reaching their majority and are "literate" only in a tongue other than English. Plaintiff's argument, if followed to its logical conclusion, would mean that these people, no matter what their foreign tongue may be, should be entitled to vote as long as they are literate in such foreign tongue.

The statute is not an unreasonable exercise of the powers of the state to provide requirements for exercising the elective franchise. It is not unreasonable to expect a voter not only to be conversant with the issues presented for determination in choosing between candidates for election, but also to understand the language used in connection with voting. For example, there are printed in English on the ballot synopses of proposed constitutional amendments, titles of the offices to be filled and directives as to the use of the paper ballot or voting machine. Finally, what is more proper than that the voter be literate in the language used to conduct the business of government in his state.

It is because of this view of the issue presented that the testimony received on the hearing in this matter, while relevant to the issue, is immaterial to its determination.[1]

The literacy requirement is applicable to all citizens of New York without regard to race, creed, color or sex. No charge is made that the test is improperly given or its contents unfair. The test is equally and fairly applied to all who take it. Plaintiff has not been denied the

---

1. It was stipulated that if the Mayor of San Juan, Puerto Rico, were called she would testify that between 1898 and 1948 attempts to teach ordinary subjects in the English language in grade schools in Puerto Rico were unsuccessful because the mother tongue of the children was Spanish; that after 1948 all required subjects were taught in Spanish up to the sixth or eighth grades; that the subjects taught were those taught on the mainland, and that the books were the same textbooks, by and large, used in the public schools throughout the mainland except that they were translated into the Spanish language. The editor of a Spanish language daily newspaper published in New York City testified that his paper is distributed throughout the State of New York; that it has correspondents in the major cities of the state where there are Puerto Rican residents, and that these correspondents, in addition to special correspondents who visit these areas during the pre-election period, write articles about the issues and the candidates to be voted upon at the general election. He testified that his newspaper gives more space proportionately to politics than any other newspaper in the country and that there is another Spanish language daily newspaper that generally does the same thing. There are also six radio stations which program this type of news in the Spanish language and four weekly magazines in the Spanish language.

equal protection of the laws nor has he been deprived of his life, liberty or property, in violation of the Fourteenth Amendment. Lassiter v. Northampton Co. Board of Elections, supra; Trudeau v. Barnes, supra.

Plaintiff has not directly raised in his pleading the question of the Fifteenth Amendment except in the sense that he states that "he is being denied the equal protection of the law guaranteed to him by the 14th Amendment" because "he is being denied the right to vote because of his race, as a Puerto Rican of Spanish ancestry." However, in the brief submitted after hearing before this court, he claims conflict between the statutory provisions of New York and the Fifteenth Amendment in their application to the Puerto Rican community of New York. He claims that "race" and "color" were not intended to have a narrow or technical connotation, but refer to any minority in the community. In the Lassiter case 360 U.S. at page 53, 79 S.Ct. at page 991 the court said:

> "Of course a literacy test, fair on its face, may be employed to perpetuate that discrimination which the Fifteenth Amendment was designed to uproot."

Because the plaintiff is unable to vote as a result of his inability to pass the test, it does not follow that the plaintiff is being discriminated against. The Fifteenth Amendment was not designed to protect against the claim of this plaintiff. He is not being denied the right to vote because of race, creed or color, but because of his illiteracy in the English language.

Plaintiff places reliance on the Civil Rights Act of 1957 (42 U.S.C.A. § 1971). Subdivision (a) of § 1971 provides that:

> "All citizens * * * *who are otherwise qualified by law to vote* at any election by the people in any State * * * shall be entitled * * * to vote at all such elections,

without distinction of race, color, or previous condition of servitude;" (emphasis supplied).

This is merely a restatement of the Fifteenth Amendment except that it adds the words "who are otherwise qualified by law to vote". The added words serve as a limitation insofar as the plaintiff is concerned. The requirement of literacy in the English language is a proper exercise of state power; the plaintiff is therefore not qualified under the laws of New York and this subdivision is inapplicable to him.

Subdivision (b) is of no help to the plaintiff since it is directed at deliberate acts of intimidation, threats and coercion, none of which are charged here.

The complaint is dismissed.

EDELSTEIN, District Judge (concurring).

I concur in the dismissal of the complaint.

Plaintiff has alleged six grounds as the basis for his claim to relief. As to the first four grounds, i. e., the Treaty of Paris, the Fourteenth Amendment, the Fifteenth Amendment and 42 U.S.C.A. § 1971(a), and as to that portion of the fifth ground which refers to the Civil Rights Act of 1957, I agree that plaintiff is barred by res judicata. As to that portion of the fifth ground which refers to the Civil Rights Act of 1960 and as to the sixth ground, i. e., Article 55 of the United Nations Charter, I agree that they are not applicable for the reasons stated in the court's opinion. I also concur in the dismissal of the complaint as against the Governor and the Attorney General of the state on the ground that they are not proper parties.

Since this disposes of the case, I see no need for a dictum on the merits of those issues which are not before the court. Accordingly, I concur in the result without expressing any opinion on the merits of the issues raised by plaintiff which are barred by res judicata.