Jack G. **HARDY** and Ralph S. Von Kohorn on behalf of each and on behalf of all others similarly situated, Plaintiffs,

v.

John P. **LOMENZO**, Secretary of State of the State of New York, et al., Defendants.

No. 72 Civ. 3965.

United States District Court, S. D. New York.

Oct. 2, 1972.

On Reargument Oct. 18, 1972.

New York Civil Liberties Union, by Burt Neuborne, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, by A. Seth Greenwald, Asst. Atty. Gen., New York City, for defendants Rockefeller and Lomenzo and pro se.

John J. S. Mead, Westchester County Atty., by John J. Sherlock, Senior Asst. County Atty., White Plains, N. Y., for defendants Van Wart and Hayduk, Commissioners of the Westchester County Board of Elections.

CANNELLA, District Judge.

This matter came originally before the Court on motion of plaintiffs for an order, pursuant to Title 28 U.S.Code Sections 2281 and 2284, convening a statutory three judge court to hear and determine this action or in the alternative for appropriate relief declaring plaintiffs' rights and the defendants' responsibilities herein. On the hearing plaintiffs withdrew the request for a three judge court, and submitted the case to this court with the stipulation that declaratory as opposed to injunctive relief is sought.

The plaintiffs' claims are that defendants' refusal, under color of Sections 150 and 151(b) of the New York Election Law, McKinney's Consol.Laws, c. 100, to permit plaintiffs to participate in the November 7, 1972 Presidental election is violative of plaintiffs' rights under the First and Fourteenth Amendments to the Constitution of the United States; and that defendants' refusal, under color of Section 151(b) of the New York Election Law to permit plaintiffs to participate in the Presidential election abridges their right to participate in the electoral process in violation of the Voting Rights Act of 1970 (42 U.S.C. § 1973aa–1).

Defendants Rockefeller and Lomenzo and the New York Attorney General, on their part, move for an order pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, dismissing the complaint upon the grounds that the court lacks jurisdiction, and further that the complaint fails to state a claim upon which relief may be granted and that the complaint is banned by laches. The motion addressed to the court's jurisdiction is without substantiation and is denied. The motion based on laches although of some merit also is denied. That part of the defendants' motion which is addressed to the sufficiency of the complaint is granted for reasons hereafter discussed.

The facts as taken from the submitted papers are as follows: Plaintiff, Von Kohorn resided in Westchester County, New York, from 1938 to 1963 when he moved from Westchester County to New Zealand where apparently he has since remained, except for a visit to the Westchester County Board of Elections on or about April 11, 1972 where he submitted an application for absentee registration which was on the same day rejected. He abides in New Zealand and his future domiciliary plans are uncertain but he does wish to vote in the 1972 Presidential election.

Plaintiff, Hardy, resided in Scarsdale, Westchester County, New York, until December 1964 when he moved to Brazil because of business obligations. He intends to return to Westchester County upon completion of his business obligations but has no nexus with New York or the county except that he maintains a telephone listing at his mother's home in Westchester. His request for absentee registration to vote in the 1972 Presidential election was rejected by the Westchester County Board of Elections early in 1972.

■ The claim of Von Kohorn may be disposed of summarily. After a temporary residence in Westchester County, New York, he moved to Wellington, New Zealand. The reason for his move is not assigned and he evinces no intention ever to return to New York, or, indeed, to the United States. His expressed desire to vote in the 1972 Presidential election gives him no grievance against the defendants or any of them. He is for the purposes of the present record a resident of Wellington and so far as known intends so to remain.

Hardy's claim requires an examination of the statutes here involved. New York Election Law Section 151(b) provides as to residence for the purpose of registering and voting:

"(b) As used in this article, the word 'residence' shall be deemed to mean that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return."

■ The question first to be considered is whether or not the Voting Rights Act of 1970, 42 U.S.C. § 1973aa–1, is preemptive of that definition. The avowed purpose of the Voting Rights Act is to abolish durational residency requirements as a precondition to voting for the offices of President and Vice President and to prescribe uniform opportunities for absentee registration and absentee balloting in presidential elections. 42 U.S.C. § 1973aa–1(a), (b); Oregon v. Mitchell, 400 U.S. 112, 134, 236, 286, 287 (1970). The rationale is that the imposition of parochial durational residency requirements unreasonably burdens

the privilege of taking up residence in another state. It seems clear, however, that the Voting Rights Act did not intend to abrogate the power of the several states to define residence so as to insure that voting be limited to bona fide residents. The sole exception is found in 42 U.S.C. § 1973aa–1, Subd. (e) which permits persons moving within 30 days prior to election to vote in the State of prior residence.

Thus, with particular reference to the present case the Voting Rights Act, 42 U.S.C. § 1973aa–1(c), provides:

". . . nor shall any citizen of the United States be denied the right to vote for electors for President and Vice President, or for President and Vice President, in such election because of the failure of such citizen to be physically present in such State or political subdivision at the time of such election, *if such citizen shall have complied with the requirements prescribed by the law of such State or political subdivision providing for the casting of absentee ballots in such election.* (Emphasis supplied).

Similarly, subdivision (d) provides:

"For the purposes of this section, each State shall provide by law for the registration or other means of qualification *of all duly qualified residents of such State . . . ;* and each State shall provide by law for the casting of absentee ballots . . . *by all duly qualified residents of such State* who may be absent . . .". (Emphasis supplied).

Plaintiffs urge that the emphasized phrases of the Act should be ignored in its construction, but the court cannot take the view that this recurrent language was inserted into the Act without meaning. If, as suggested the language is inadvertent, the remedy lies with the legislature and not in judicial elision.

The court finds that the Voting Rights Act of 1970 while abolishing durational residency requirements, in no sense ab-

rogates the rights of the several states to enact bona fide residence requirements. The distinction is clearly recognized in Dunn v. Blumstein, 405 U.S. 330 at 343, 92 S.Ct. 995 at 1003–1004, 31 L.Ed.2d 274 (1972).

". . . We emphasize again the difference between bona fide residence requirements and durational residence requirements. We have in the past noted approvingly that the States have the power to require that voters be bona fide residents of the relevant political subdivision. E. g., Evans v. Cornman, 398 U.S. 419, at 422, 90 S.Ct. 1752, 26 L.Ed.2d 370; Kramer v. Union Free School District, *supra,* 395 U.S. 621, at 625, 89 S.Ct. 1886, 23 L.Ed.2d 583; Carrington v. Rash, 380 U.S. 89, at 91, 85 S.Ct. 775, 13 L.Ed.2d 675; Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904). An appropriately defined and uniformly applied requirement of bona fide residence may be necessary to preserve the basic conception of a political community, and therefore could withstand close constitutional scrutiny. But *durational* residence requirements, representing a separate voting qualification imposed on bona fide residents, must be separately tested by the stringent standard. Cf. Shapiro v. Thompson, *supra,* 394 U.S. 618, at 636, 89 S.Ct. 1322, 22 L.Ed.2d 600. (Emphasis in original).

The court finds that the defendants' refusal under Section 151(b) of the New York Election Law, to permit plaintiffs to participate in the 1972 Presidential election does not abridge the plaintiffs' rights under the Voting Rights Act of 1970.

This conclusion requires consideration of plaintiffs' remaining claims namely, that defendants' refusal under color of Sections 150 and 151(b) of New York Election Law, to permit plaintiffs to participate in the November 7, 1972 Presidential election denies them equal protection of the laws and abridges their privileges and immunities in violation of the Fourteenth Amendment of the Unit-

ed States Constitution and abridges their right to participate in the electoral process in violation of the First Amendment.

New York Election Law, Section 150, relates to qualifications of voters requiring among other things residency of the State. The definition of "residence" is set forth in Section 151(b) and is quoted above. Plaintiffs' memorandum makes clear, however, that the claim of unconstitutionality derives from New York Election Law, Section 151(a), which provides, in part, as follows:

"(a) For the purpose of registering and voting no person shall be *deemed* to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any institution of learning; nor while kept at any welfare institution, asylum or other institution wholly or partly supported at public expense or by charity; nor while confined in any public prison . . .". (Emphasis Supplied).

The argument in that "no rational basis exists for such an arbitrary discrimination which acts to disenfranchise Americans residing abroad simply because they are employed in a private rather than a governmental capacity". In the opinion of the court, however, no such arbitrary discrimination is made. The word "deemed", given proper cognizance, creates a presumption only and the further provisions of the quoted subdivision make it clear that the presumption is effective only upon presentation of suitable evidence of continued residence. Thus:

". . . Any person applying for registration who claims to belong to any class of persons mentioned in this section shall file with the board taking his registration a written statement showing where he actually resides and where he claims to be legally domiciled, his business or occupation, his business address, and to which class he claims to belong . . .".

The court finds that the New York statutory requirements serve a legitimate purpose in seeking to ensure that voters be bona fide residents and do not discriminate against or abridge the plaintiffs' rights under the Constitution of the United States. The complaint, accordingly is dismissed.

So ordered.

## ON REARGUMENT

The motion to reargue is granted and on reargument the court adheres to its opinion of October 2, 1972. For the purposes of reargument, the court by order of October 12, 1972, on consent granted the application of United States Senator Barry Goldwater to intervene *amicus curiae* in behalf of plaintiffs and has considered the brief submitted in his behalf, as well as the brief and affidavits of plaintiffs and the opposing brief of defendants Lomenzo and Rockefeller.

The basis of submission of this action to the court is set forth in the court's original opinion. On reargument plaintiffs address themselves specifically to the Equal Protection clause of the Fourteenth Amendment. (Petitioner's memorandum of law, p. 2). The intervenor asks review of all aspects of the case as originally submitted.

It is noted that with plaintiffs' memorandum plaintiff, Von Kohorn, has submitted an affidavit stating, among other things, "I intend to reestablish a domicil in White Plains although my future domiciliary plans are still uncertain." This differs little from Von Kohorn's original position and is utterly lacking of that element of present intent required to establish voting residence. See Ramey v. Rockefeller, 348 F.Supp. 780 (E.D.N.Y.1972).

Recognizing fully the intervenor's position that the legislative history of the Voting Rights Act Amendments of 1970, and his personal purpose show a clear intent to provide the broadest possible opportunity to citizens to register

to vote in a Presidential election, the court finds no reason to alter its original opinion that this objective, by the terms of the Act, does not transcend the power of the States to require that voters be bona fide residents. See Dunn v. Blumstein, 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

On October 3, 1972, the day following this court's opinion of October 2, 1972, a statutory three judge court convened for the United States District Court for the Eastern District of New York, handed down an opinion in which Sections 151(a) and 151(b) of the New York Election Law are considered learnedly and at length. Ramey v. Rockefeller, 348 F.Supp. 780 (E.D.N.Y.1972). These are the sections of the New York Law here under assault on constitutional grounds. The case arose in different context (dormitory students physically present in New York), but it is noted the court found no inconsistency between the sections and no reason to declare the New York statutes unconstitutional.

Relevant to the claim of the plaintiff Hardy is the following, taken from *Ramey*: "The objective is to determine the place which is the center of the individual's life now, the locus of his primary concern. The determination must be based on all relevant factors; . . . *the state may insist on other indicia* . . .". (Emphasis supplied). Hardy moved from New York to Brazil in 1964. In the years intervening, until his present application never has he offered to vote in New York. His professed intention to return at some indeterminate time is bolstered only by a telephone listing at his mother's home. The court is of the opinion that under section 151(b), even as modified in *Ramey*, New York is entitled to stronger evidence of allegiance than that here presented.

The court does not consider this a class action. For evident reasons each application to register to vote is distinct and requires separate consideration.

The court having granted and considered the motion to reargue adheres to its opinion of October 2, 1972.