The Honorable Gwen Welshimer State Representative, 88th District State Capitol, Rm. 281-W Topeka, Kansas 66612
Dear Representative Welshimer:
You request our opinion regarding the constitutionality of statutory provisions pertaining to advance voting. Specifically, you ask whether statutory provisions addressing distribution of advance voting applications by a person or group violate the constitutional rights of the voters.
In 1995, Kansas enacted legislation which provided for advance voting, a concept that replaced absentee voting.[1] Under advance voting, "[a]ny registered voter is eligible to vote by advance voting ballot on all offices and to vote by advance voting ballot on questions submitted on which such elector would otherwise be entitled to vote."[2] In order to obtain an advance voting ballot, an elector must file a signed advance voting application with the county election officer.[3] Upon receipt of the application, the county election officer is obligated to "deliver to the voter such ballots and instructions as are provided for in this act."[4] The advance voting ballot may be transmitted to the elector either by mail[5] or in person in the office of the county election officer or at a satellite advance voting site.[6] The advance voting ballot is to be completed by the elector and transmitted back to the county election officer.[7]
During the 2000 legislative session, K.S.A. 25-1122 and 25-1128
were amended to address concerns regarding delivery of advance voting applications from voters to the county election officers. The amended provisions state:
 "The signed application shall be transmitted only to the county election officer by personal delivery, mail, facsimile or as otherwise provided by law."[8]
 "Except as provided in K.S.A. 25-1124, and amendments thereto, no person shall interfere with or delay the transmission of any advance voting ballot application from a voter to the county election officer, nor shall any person mail, fax or otherwise cause the application to be sent to a place other than the county election officer. Any person or group engaged in the distribution of advance voting ballot applications shall mail, fax or otherwise deliver any application signed by a voter to the county election officer within 48 hours after such application is signed by the applicant."[9]
Your concern involves the new restrictions on the manner in which the advance voting applications may be transmitted to the county election officer.
 "[T]he privilege to vote in a State is within the jurisdiction of the State itself, to be exercised as the State may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals in violation of the Federal Constitution."[10] "While voting is of fundamental constitutional significance, the rights to vote in any manner and to associate for political purposes through the ballot are not absolute."[11] "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election and campaign related disorder."[12]
 "Election laws will invariably impose some burden upon individual voters. Each provision of a code, `whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects — at least to some degree — the individual's right to vote and his right to associate with others for political ends.'"[13]
The United States Supreme Court has established the test to be applied in determining whether a state regulation of voting rights impermissibly intrudes upon the First and Fourteenth Amendment rights of the voter.
 "When deciding whether a state election law violates First and Fourteenth Amendment associational rights, [the Court] weigh[s] the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider[s] the extent to which the State's concerns make the burden necessary. Burdick, [504 U.S. 428, 434, 112 S.Ct. 2059, 2070-2071, 119 L.Ed.2d 245 (1992)] (quoting Anderson v. Celebrezze, 460 U.S. 780, 789 (1983)). Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. Burdick, supra, at 434 (quoting Anderson, supra, at 788); Norman [v. Reed], [502 U.S. 279, 288-89, 112 S.Ct. 698, 704-705, 116 L.Ed.2d 711 (1992)] (requiring corresponding interest sufficiently weighty to justify the limitation). No bright line separates permissible election related regulation from unconstitutional infringements on First Amendment freedoms. Storer [v. Brown], [415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974)] ((N)o litmus paper test . . . separat(es) those restrictions that are valid from those that are invidious . . . . The rule is not self executing and is no substitute for the hard judgments that must be made)."[14]
In determining the burden on the associational rights of the voter, it is necessary to review the effect of the amendments to K.S.A. 25-1122 and 25-1128. The provision added to K.S.A. 25-1122
and the first part of the provision added to K.S.A. 25-1128 appear to require that advance voting applications be transmitted only to the county election officer, whether by personal delivery, mail, facsimile, or as otherwise provided by law. The second part of the provision added to K.S.A. 25-1128, however, allows a person or group engaged in the distribution of advance voting applications a 48-hour period in which to deliver advance voting applications to the county election officer. Prior to the general election conducted in November, 1998, some groups that engaged in distributing advance voting applications had the voters deliver the completed applications back to the groups, who then retained the applications for an extended period of time while the groups verified the applications for their own purposes.[15] In one instance, 4,000 advance voting applications were retained by a group for a period of seven to ten days following completion of the applications by the voters.[16] The delay in forwarding the completed advance voting applications to the county election officer resulted in some confusion on the part of voters who did not receive advance voting ballots in a timely fashion[17] and resulted in a hardship for staff of the county election officer when large quantities of applications were delivered at one time.[18]
As originally proposed, the amendments included only the provision added to K.S.A. 25-1122 and the first provision added to K.S.A.25-1128,[19] resulting in concerns by at least one State representative that the amendments could be interpreted as prohibiting a person or group from collecting completed advance voting applications at nursing homes, hospitals, retirement communities, churches, and other similar locations.[20] The provision regarding the 48-hour period was added by the Kansas Senate.[21] In reading these provisions together,[22] it is clear that the Legislature intended to continue authorizing delivery of completed advance voting applications to a person or group engaged in the distribution of the applications. The only change is that the advance voting applications are to be mailed, faxed, or otherwise delivered by such person or group to the county election officer within 48 hours after the applications are signed by the individual voters, rather than within any time frame that was convenient for the person or group. Any burden falls upon the person or group engaged in the distribution of the applications. The provisions, therefore, are subject to a less exacting review.
The burden imposed by the provisions does not affect the ability of the voters to cast their ballots for the candidates they believe best represent their views. The provisions were enacted to lessen voter confusion when advance voting ballots were not delivered to voters in a timely manner by the county election officer. The provisions were also deemed necessary as a means of alleviating instances where a large number of advance voting applications are accumulated and then submitted at one time, potentially overwhelming the staff of the county election officer and impeding delivery of advance voting ballots to the voters. Thus, important regulatory interests of the State are served through the provisions. Further, the burden falls equally on all persons and groups engaged in distributing advance voting applications. The provisions, therefore, do not violate the associational rights of Kansas voters.
One concern you specifically raised regarded your belief that voters should have the constitutional right to request that any person or group forward their advance voting applications to the county election officer. "All election law is created either by the constitution or by statute."[23] The United States Constitution leaves to the states the authority to prescribe the times, places, and manner for holding elections for United States senators and representatives, subject to alteration by Congress.[24] The Kansas Constitution guarantees the right of designated voters to vote by absentee ballot,[25] but leaves to the Legislature the authority to establish the mechanisms and procedures for exercising such right.[26] Neither the United States nor the Kansas Constitution confers upon the voters the right to select how and by whom voting materials may be delivered to proper election officers. The ability of Kansas voters to select a person or group to deliver advance voting applications to the county election officer remains subject to statutory provisions enacted by the Kansas Legislature. The provisions adopted during the 2000 legislative session resulting in amendments to K.S.A. 25-1122 and 25-1128 do not violate the associational rights of Kansas voters.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] See L. 1995, Ch. 192.
[2] K.S.A. 25-1119(a).
[3] K.S.A. 25-1122(a).
[4] K.S.A. 25-1122(c). See also K.S.A. 25-1123(a).
[5] But see K.S.A. 25-1123(b) (address restrictions do not apply to an advance voting ballot requested by a sick, physically disabled, or illiterate elector).
[6] K.S.A. 25-1123(a).
[7] K.S.A. 25-1124(a).
[8] K.S.A. 25-1122(a) (emphasis denotes new language added in L. 2000, Ch. 151, § 1).
[9] K.S.A. 25-1128(b). This subsection was added to the statute in L. 2000, Ch. 151, § 2.
[10] Carrington v. Rash, 380 U.S. 89, 92, 85 S.Ct. 775,13 L.Ed.2d 675 (1965), quoting Pope v. Williams, 193 U.S. 621, 632,24 S.Ct. 573, 48 L.Ed. 817 (1904).
[11] Hagelin for President Comm. of Kan. v. Graves, 25 F.3d 956,959 (10th Cir. 1994), cert. denied, 513 U.S. 1126, 115 S.Ct. 934,130 L.Ed.2d 880 (1995), citing Burdick v. Takushi, 504 U.S. 428,434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).
[12] Timmons v. Twin City Area New Party, 520 U.S. 352, 358-59,117 S.Ct. 1364, 137 L.Ed.2d 589 (1997).
[13] Burdick, 504 U.S. at 434, quoting Anderson v. Celebreeze,460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547(1983).
[14] Timmons, 520 U.S. at 358-59 (internal quotation marks omitted).
[15] See Minutes, Senate Committee on Elections and Local Government, March 16, 2000; Minutes, Senate Committee on Elections and Local Government, March 8, 2000; Minutes, House Committee on Governmental Organization and Elections, February 14, 2000.
[16] Minutes, House Committee on Governmental Organization and Elections, Attachment #1, March 8, 2000.
[17] See Minutes, Senate Committee on Elections and Local Government, March 16, 2000; Minutes, Senate Committee on Elections and Local Government, March 8, 2000; Minutes, House Committee on Governmental Organization and Elections, February 14, 2000.
[18] Minutes, House Committee on Governmental Organization and Elections, Attachment #1, March 8, 2000.
[19] Journal of the House, 1411, February 16, 2000; Journal of the House, 1454-55, February 23, 2000.
[20] Journal of the House, 1455 (Explanation of Vote), February 23, 2000.
[21] Journal of the Senate, 1452-53, March 24, 2000.
[22] KPERS v. Reimer Koger Associates, Inc., 262 Kan. 635, 643
(1997); St. Joseph Development Corp. v. Sequenzia,25 Kan. App. 2d 514, 515 (1998).
[23] Thomason v. Stout, 267 Kan. 234, 238 (1999), quoting Lambethv. Levens, 237 Kan. 614, 618 (1985).
[24] U.S. Const., Art. I, § 4.
[25] Kan. Const., Art. 5, § 1.
[26] See Most Worshipful Grand Lodge of Ancient Free and AcceptedMasons of Kansas v. Board of County Comm'rs of Shawnee County,259 Kan. 510 (1996); State ex rel. Miller v. Board of Education(Peabody), 212 Kan. 482 (1973).