Joseph D. HOWE et al., Plaintiffs,

v.

Ted W. BROWN et al., Defendants.

No. C–70–905.

United States District Court,
N. D. Ohio, E. D.

Nov. 18, 1970.

Paul W. Brown, Atty. Gen., State of Ohio, for defendants.

Joseph D. Howe, pro se.

Before CELEBREZZE, Circuit Judge, GREEN, District Judge, and KALB-FLEISCH, Senior District Judge.

## OPINION

CELEBREZZE, Circuit Judge.

The Plaintiffs, Joseph B. Howe and his wife, Doris L., who lived in the State of Ohio for less than one year as of November 3, 1970, the date of certain statewide, non-Presidential elections, brought this action to enjoin Ted W. Brown, Secretary of the State of Ohio, and the Cuyahoga County Board of Elections from preventing the Plaintiffs from registering and voting in those elections. This Court entered temporary restraining orders allowing the Plaintiffs to register and vote, their marked ballots to be retained by the Board, and not counted, pending this Court's final disposition on the merits. At issue is whether Article V, Section 1 of the Ohio State Constitution (Page's ed. 1969 Supp.)[1] and Sections 3503.01, et seq. of the Ohio Revised Code (Page's ed., 1969 Supp.), which provide a one-year residency requirement for voting and registering to vote in state elections,[2] are in violation of the Constitution of the United States. A three-judge panel has been convened, pursuant to 28 U.S.C.

1. Article V, Section 1 of the Ohio State Constitution sets forth the state's age, residency, and citizenship requirements for voting, i. e., its "conditions of suffrage."

"Every citizen of the United States, of the age of twenty-one years, who shall have been a resident of the state one year next preceding the election, and of the county, township, or ward in which he resides, such times as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections. * * *" (as amended, 1957, Page's ed. 1969 Supp.)

We note that on November 3, 1970, Ohio's electorate approved an amendment to the Ohio State Constitution reducing the voter residency requirement to six months. The election has not, as of the date of this opinion, been duly certified, and does not affect the issue presently before the Court.

2. No question is raised in this case as to the right to vote for electors of President and Vice President, and we intimate no decision upon that issue. See, Par. 2, Art. V, § 1, Ohio State Constitution (Page's ed., 1969 Supp.). Pope v. Williams, 193 U.S. 621, 633, 24 S.Ct. 573, 48 L.Ed. 817 (1904) ; Hall v. Beals, 396 U.S. 45, 51, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (dissenting opinion of Mr. Justice Marshall). *Contra*, Druediñg v. Devlin, 234 F.Supp. 721 (D.Md.1964) (three-judge court), aff'd per curiam, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965).

§§ 2281, 2284 (1964), to adjudicate the substantial constitutional question raised. *See, e. g.*, Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). This Court's jurisdiction has been properly invoked under 28 U.S.C. § 1343(3) and (4) for alleged violations of the Plaintiffs' constitutional rights. Section 1, Civil Rights Act of 1871, 42 U.S.C. § 1983 (1964).

The facts are undisputed. Within one year prior to the November 3, 1970 elections, the Plaintiffs moved from without the State of Ohio to their present home in Cuyahoga County, Ohio, with the intention of residing there indefinitely. With the sole exception of duration of residency, the Plaintiffs were qualified under the Constitution and Laws of Ohio to register and vote in Ohio. Ohio Rev. Code §§ 3503.01, 3503.07, 3503.02 (Page's ed. 1960), as amended, (Supp. 1969). On September 16, 1970, the Cuyahoga County Board of Elections denied the Plaintiffs' personal applications to be registered as electors.

The Plaintiffs' challenge to the one-year residency requirement for voting in non-Presidential elections is on essentially two fronts: *first*, the Plaintiffs allege that the residency requirement deprives them of equal protection of the laws; *second*, the Plaintiffs contend that the residency requirement impinges upon their constitutional right to move freely interstate.

## I.

■ In view of the principle, implicit in the federal concept, that the states have broad powers to legislate in areas of their competence, the Supreme Court of the United States has historically exercised restraint in reviewing state legislation creating reasonable classifications of individuals in order to promote legitimate state interests. Thus, as a General Rule, where a state legislates within areas of its competence, where its legislation is nondiscriminatory on its face and as applied, and where its legislation does not impinge upon the federal constitutional rights of any citizens, any classification created by the legislation survives scrutiny under the Equal Protection Clause so long as the classification is "rationally related" to promoting a legitimate state interest, and is reasonable. This general standard for reviewing state legislation challenged under the Equal Protection Clause, is known as the "rational relation" test. It was well articulated by Mr. Chief Justice Warren in his opinion for the Court in McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961):

> "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

■ This general equal protection rule, however, is not without exception. Also implicit in our concept of federalism is the principle that the states surrender certain of their powers to the federal government. One obvious qualification to a state's power to enact valid laws is where its legislation creates classifications that impinge upon individuals' federally-secured constitutional rights. Where a state classification impinges upon citizens' constitutional rights, the Supreme Court has consistently required that it come under "more exacting scrutiny" than the "rational relation" test provides. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), discussed infra; McLaughlin v. Florida, 379 U.S. 184, 192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Korematsu v. United States, 323 U.S.

214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944). This "more exacting" equal protection formula, applied to state legislation creating classifications which impinge upon citizens' constitutional rights, has become known as the "compelling state interest" test. This test requires, first, that the classification be "necessary" to promote an articulated state interest; second, that the articulated state interest promoted be a "compelling state interest."

Until very recently, it was generally accepted that the states could determine those within its jurisdiction who were qualified to vote in state and local elections, so long as the "conditions of suffrage" they imposed were nondiscriminatory on their face and as applied, and so long as the classifications they created were "rationally related" to promoting a legitimate state interest. The conditions of suffrage that have been held constitutional by the Supreme Court: age; literacy, Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959); no previous criminal record, Davis v. Beason, 133 U.S. 333, 345–348, 10 S.Ct. 299, 33 L.Ed. 637 (1890); citizenship of the United States; and one-year residency, Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904).

■ The rationale for applying the "rational relation" test to these uniformly-applied and reasonable conditions of suffrage, was the Court's consistent belief that the power to determine who is qualified to vote in state and local elections was one that the states did not surrender to the federal government. *See* Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904); Davis v. Beason, 133 U.S. 333, 345–348, 10 S.Ct. 299, 33 L.Ed. 637 (1890); Minor v. Happersett, 21 Wall. 162, 178, 22 L.Ed. 627 (1874).

"The privilege to vote in any State is not given by the Federal Constitution, or by any of its amendments. It is not a privilege springing from citizenship of the United States. It may not be refused on account of race, color or previous condition of servitude, but it does not follow from mere citizenship of the United States. In other words, the privilege to vote in a State is within the jurisdiction of the State itself, to be exercised as the State may direct, and upon such terms as it deems proper, provided, of course, no discrimination is made between individuals in violation of the Federal Constitution." Pope v. Williams, *supra*, 193 U.S. at 632, 24 S.Ct. at 575. Citations omitted.

Since no one has the federal constitutional right to vote in State and local elections, the state may create reasonable nondiscriminatory classifications of those to whom it will grant the franchise. Since reasonable conditions of suffrage do not impinge upon a federal constitutional right to vote in state and local elections, the "rational relation" test has consistently been applied.

"The States have long been held to have broad powers to determine the *conditions* under which the right of suffrage may be exercised." Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 50, 79 S.Ct. 985, 989, 3 L.Ed.2d 1072 (1959)

"Texas has unquestioned power to impose reasonable residence restrictions on the availability of the ballot. Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817. There can be no doubt either of the historic function of the States to establish, on a nondiscriminatory basis, and in accordance with the Constitution, other qualifications for the exercise of the franchise." Carrington v. Rash, 380 U.S. 89, 91, 85 S.Ct. 775, 777, 13 L.Ed.2d 675 (1965).

*See, e. g.*, Evans v. Cornman, 398 U.S. 419, 421, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); Kramer v. Union Free School District, 395 U.S. 621, 625, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Harper v. Virginia State Board of Elections, 383 U.S. 663, 666–667, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

■ Because Ohio's one-year residency requirement for voting impinges up-

on no federal constitutional right to vote in state and local elections, there being none, we must apply the "rational relation" test to it.[3] We find that the one-year residency requirement is not unreasonable, and that it is rationally related to promoting a legitimate state interest. Legitimate state interests that could be promoted by such a requirement are: ensuring that those who vote for state and local representatives are familiar with the political candidates and issues, by having been given maximum exposure to the problems of the locality through the media of local communication; preventing individuals, motivated only by a desire to affect the state's election results, from "moving" into the state shortly before the election is held, voting, and then returning to their foreign domicile; ensuring that the electors have genuine interests in community affairs. The lines drawn by the distinctions are not infallible, but they need not be, so long as they are rationally related to these interests. McGowan v. Maryland, *supra*.

This should be the end of the matter; indeed, the issue in this case might have been decided somewhat more summarily but for some recent decisions from other district courts which have declared similar residency requirements unconstitutional. Those decisions hold that a line of recent Supreme Court cases, beginning with Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) alter the constitutional relationship between the powers of the states and the federal government in prescribing conditions of suffrage, and apply the "compelling state interest" test to residency requirements similar to Ohio's. *See, e. g.*, Blumstein v. Ellington, Civil No. 5815 M.D.Tenn., Aug. 31, 1970 (three-judge court), appeal pending; Burg v. Canniffe, 315 F.Supp. 380 (D.Mass., 1970) (three-judge court). Because of our deference for those panels, and the importance of the issue we decide, it is necessary to demonstrate

why we believe that *Kramer* and its progeny do not alter the historic power of the states to prescribe reasonable conditions of suffrage (*i. e.*, age, citizenship, and residency requirements), and why we respectfully believe their opinions are in error.

We have already demonstrated that the "rational relation" test has consistently been held applicable to state legislation specifying reasonable conditions of suffrage because the federal Constitution gives no one the right to vote in state and local elections. Therefore, as we have noted, nondiscriminatory conditions of suffrage, used to qualify a *general state electorate*, will be upheld if they are "rationally related" to promoting a legitimate state interest, because the classifications they create do not impinge upon anyone's constitutional rights.

*Kramer* and its progeny stand for the following proposition: Persons who *qualify* under a state's valid election laws (by meeting its conditions of suffrage, *i. e.*, age, residency, and citizenship requirements) have a *constitutional right* to vote in *all* state and local elections in which they have an interest. No state legislation or constitution may *impinge* upon this constitutional right to vote *once qualified* by "selectively excluding" a class of otherwise qualified electors from voting in any election in which they have an interest, unless the "compelling state interest" test is satisfied; that is, the classification of otherwise qualified voters excluded must be "necessary" to promote a "compelling state interest."

This rule is not without good reason. There is a common element present in all voting rights cases applying the "compelling state interest" test that is not present in the instant case: that is, the clear and present danger that the classification was created by the state for the purpose of, or with the effect of, " 'fencing out' from the franchise

3. The question whether it impinges upon the Plaintiffs' constitutional right to move interstate is discussed in the next section of this opinion.

a sector of the population because of the way they might vote." Carrington v. Rash, 380 U.S. 89, 94, 85 S.Ct. 775, 779, 13 L.Ed.2d 675 (1965). A state's act, in carving out a sub-class of otherwise qualified voters from the larger class of those who qualify under the state's conditions of suffrage, presents a dangerous potential for political abuse. This activity clearly has constitutional overtones, and it is appropriate that it be examined under a standard requiring exacting scrutiny.

"It has been repeatedly recognized that all *qualified* voters have a constitutionally protected right to vote, and to have their votes counted. * * * The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote as effectively as by prohibiting the free exercise of the franchise." Reynolds v. Sims, 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964). Emphasis added.

"Obviously included within the right to chose, secured by the Constitution, is the right of *qualified* voters within a state to cast their ballots and have them counted." United States v. Classic, 313 U.S. 299, 315, 61 S.Ct. 1031, 1037, 85 L.Ed. 1368 (1941). Emphasis added.

"The sole issue in this case is whether the *additional* requirements of § 2012—requirements which prohibit some district residents who are *otherwise qualified* [emphasis added] by age and citizenship from participating in district meetings and school board elections—violate the Fourteenth Amendment's command that no State shall deny persons equal protection of the laws. * * * [W]hen we are reviewing statutes which deny some residents the right to vote, the general presumption of constitutionality afforded state statutes and the traditional approval given state classifications if the Court can conceive of a 'rational basis' for the distinctions made are not applicable. * * * [I]f a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest." Kramer v. Union Free School District, *supra*, 395 U.S. at 625–628, 89 S.Ct. at 1889–1890.

"As we noted in *Kramer, supra,* if a challenged state statute grants the right to vote in a limited purpose election to some *otherwise qualified voters* and denies it to others, 'the Court must determine whether the *exclusions* are necessary to promote a compelling state interest.'" Cipriano v. City of Houma, 395 U.S. 701, 704, 89 S.Ct. 1897, 1899, 23 L.Ed.2d 647 (1969).

"Maryland may, of course, require that 'all applicants for the vote actually fulfill the requirements of bona fide residence.' [Citations omitted.] 'But if they are in fact residents, with the intention of making [the State] their home indefinitely, they, as all other qualified residents, have a right to an equal opportunity for political representation. * * * [T]he right to vote, as the citizen's link to his laws and government, is protective of all fundamental rights and privileges. And before that right can be *restricted*, the purpose of the restriction and the assertedly overriding interest served by it must meet close constitutional scrutiny." Evans v. Cornman, 398 U.S. 419, 421, 422, 90 S.Ct. 1752, 1754, 26 L.Ed.2d 370 (1970). Citations omitted. Emphasis added.

"Presumptively, when all citizens are affected in important ways by a governmental decision subject to a referendum, the Constitution does not permit weighted voting or the *exclusion* of *otherwise qualified citizens*

from the franchise." City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 209, 90 S.Ct. 1990, 1994, 26 L.Ed.2d 523 (1970). Emphasis added.

That the "compelling state interest" test is reserved for this narrowly circumscribed species of cases, in which a state voter classification impinges upon the constitutional right of *all qualified voters* to vote in *all* state and local elections in which they have an interest, is more clearly appreciated and understood if the facts of the cases in which the Supreme Court has applied that test are closely analyzed.

In Kramer v. Union Free School District, *supra,* a state constitution and laws excluded from voting in certain school district elections all persons who were *otherwise qualified* as electors under the state's election laws, but who neither owned nor leased real property, nor had children in school. The state interest articulated to justify this classification was to exclude all but those who were "directly interested" in the election outcome. Applying the "compelling state interest" test, the Supreme Court found the exclusion "unnecessary" to promote the articulated state interest.

In Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), a state statute and constitutional provision excluded *otherwise qualified* non-property owners from voting in elections called to approve the issuance of municipal revenue bonds. Applying the "compelling state interest" test, the Supreme Court held that the classification was not "necessary" to promote an articulated state interest.

The Supreme Court applied the "compelling state interest" test in Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970), where the state of Maryland carved a sub-class of *otherwise qualified voters* out of its general electorate simply because they lived on a federal enclave within the state, and even though those otherwise qualified voters excluded were shown to have had an equal stake in the outcome of state

elections. The Supreme Court held the *exclusion* invalid.

The Court's most recent application of the "compelling state interest" test was in City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970). In that case the Supreme Court invalidated Arizona statutory and constitutional provisions allowing *only* property owners, who were qualified by the state's conditions of suffrage (i. e. age, residency, and citizenship) to vote on general obligation bond issues. Non-property owners, who were *otherwise qualified* to vote under the state's conditions of suffrage were *excluded.* The articulated state purpose for this exclusion was to allow only those who have the principal burden of paying off the bond issues to vote. The Supreme Court held that this *exclusion* did not promote a "compelling state interest" for two principal reasons: (a) the statutes and constitution of Arizona authorized the payment of general obligation bonds from funds other than property taxes; (b) the non-property owners excluded had an equal stake in the improvements that were to be financed by the bond issue.

Thus, in Kramer v. Union Free School District, *supra,* the classification had the effect of "fencing out" otherwise qualified voters because of the way they might vote on financing of schools. In Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), which we have not synthesized, the classification had the articulated state purpose of "fencing out" otherwise qualified electors, who happened also to be military personnel, because of the way military personnel tend to vote. In Evans v. Cornman, *supra,* and Cipriano v. City of Houma, *supra,* the states "fenced out" otherwise qualified voters for no legitimate reason whatever. And in City of Phoenix, Ariz. v. Kolodziejski, *supra,* the state "fenced out" otherwise qualified voters who did not own real property who, therefore, might tend to vote in favor of general obligation bonds

financed principally out of property taxes.

In the instant case, however, there is no allegation that the residency requirement has the purpose or effect of disenfranchising individuals or classes of individuals because of the way they might vote. There is no allegation whatever that persons who have lived within the state for less than one year *tend* to vote the same way on any issues. The requirement applies uniformly. There is no suggestion that it is applied unconstitutionally: the Plaintiff, a college professor, is not claiming that the requirement is applied only to other college professors, or to people on grounds of race, religion, wealth, nationality, or sex. Naturally, it creates a classification: of persons who have lived in the state for less than one year. But literacy tests also create classifications: of people who can neither read nor write. Age requirements also create classifications: infants are not allowed to vote. Similarly, citizenship conditions of suffrage create classifications, but we could not declare them invidiously discriminatory. Until the Supreme Court sees the need to apply the "compelling state interest" test in all voting rights cases, or applies it across the board in equal protection cases, it is not within this Court's province to declare every inequality, every inconvenience, every burden a state places upon one class of citizens and not on another, and every distinction created by legislatures violative of the Equal Protection Clause. Quite the contrary; unless and until the Supreme Court teaches otherwise, this Court must uphold state classifications, which do not impinge upon constitutionally protected rights and are applied nondiscriminatorily, so long as the classification is rationally related to promoting a legitimate state interest.

"The present requirement, applicable to members of all races, is that the prospective voter 'be able to read and write any section of the Constitution of North Carolina in the English language.' That seems to us to be one fair way of determining whether a person is literate, not a calculated scheme to lay springes for the citizen. Certainly we cannot condemn it on its face as a device unrelated to the desire of North Carolina to raise the standards for people of all races who cast the ballot." Lassiter v. Northampton County Board of Elections, *supra*, 360 U.S. at 53–54, 79 S.Ct. at 991.

The Nineteenth Amendment to the Constitution of the United States was thought necessary for reasons precisely relevant now: nothing in the Constitution or any of its Amendments could be construed to confer the right to vote in state elections on anyone. *See* Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627 (1874). Until the Constitution is amended, or until the United States Supreme Court construes its own precedent otherwise, we cannot hold that the Equal Protection Clause of the Fourteenth Amendment empowers the federal courts to strike down reasonable conditions of suffrage (*i. e.*, age, citizenship, and residency requirements) enacted by duly-constituted state legislatures for legitimate state purposes, or empowers this federal court to give persons who have lived in Ohio for less than one year the right to vote in state elections. *See* Pope v. Williams, *supra*, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817.

## II.

■ The second front of the Plaintiffs' attack on Ohio's one-year residency requirement is that it impinges upon their constitutional right to move from state to state. The principal authority cited for this proposition is Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

Under review in Shapiro v. Thompson were statutory provisions from Connecticut, Pennsylvania, and the District of Columbia, which denied welfare assistance to persons who met all other eligibility requirements, but who. had not resided within the jurisdiction for at least a year immediately preceding their

applications for assistance. In *Shapiro*, the Supreme Court found that the "specific objective" of the legislation was to "fence out" from the jurisdictions poor people. Since the legislation had the express purpose and effect of impinging upon those persons' constitutional right to move freely interstate, the Supreme Court, applying the "compelling state interest" test, held the statutes invalid. The Court found the legislation "necessary" to promote the articulated state interest, but found the state interest constitutionally impermissible.

"The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." 394 U.S. at 634, 89 S.Ct. at 1331.[4]

In the instant case, there is no allegation whatever that the one-year residency requirement for voting in state elections is intended to, or has the effect of, "fencing out" anyone from the State of Ohio. We cannot hold, without clear proof to the contrary, that anyone having the intention of moving to Ohio and living here indefinitely is inhibited by the fact that he would not be granted the franchise until he had lived in the State for a year. We therefore are unable to find that the requirement impinges upon the constitutional right to move freely interstate, and hold, therefore, that the "compelling state interest" test is not applicable.

The temporary restraining order entered for the Plaintiffs will be dissolved,

and judgment will be entered for the Defendants.

So ordered.

BEN C. GREEN, District Judge (dissenting):

I find that I am unable to concur in the opinion of the majority herein, in that the conclusion so reached is premised on the application of the "rational relation" test as enunciated in Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904). While I recognize that Pope v. Williams has never been expressly overruled by the Supreme Court, I am in agreement with the views expressed in Blumstein v. Ellington, Civil No. 5815 (D.C.M.D.Tenn., August 31, 1970) (three judge court) and Burg v. Canniffe, 315 F.Supp. 380 (D.C.Mass., 1970) (three judge court), that the recent trend of Supreme Court rulings demonstrate that the "rational relation" rule is no longer the appropriate standard to be applied in this case.

It is my opinion that the "rational relation" test has, as set forth in the courts' decisions in Blumstein v. Ellington, supra, and Burg v. Canniffe, supra, been supplanted by the criteria of "compelling state interest", Kramer v. Union Free School District, 395 U.S. 621 at 627, 89 S.Ct. 1886, at 1890, 23 L.Ed. 2d 583 (1969):

\* \* \* if a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest.

With all respect for the views of my colleagues on this panel, I am persuaded that those cases applying the "compelling

---

4. See also, 394 U.S. at 638, n. 21, 89 S.Ct. at 1333:

"We imply no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, \* \* \* Such requirements may promote compelling state interests on the *one hand*, or, *on the other* [emphasis added] may

not be penalties upon the exercise of the constitutional right of interstate travel." Although concededly ambiguous, this statement implies that requirements that do not penalize the right of interstate travel are scrutinized under the less-exacting, "rational relation" test.

state interest" rule represent the proper application of the Supreme Court's most recent rulings. *Cf.*, City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

At oral argument, counsel for defendant Cuyahoga County Board of Elections stated that there was no compelling state interest in the one-year residency requirement. The record does not reflect any evidence establishing a compelling state interest in maintaining the one-year residency requirement. Based on counsel's concession and the state of the record, I am of the opinion that enforcement of the one-year residency requirement of Article V, Section 1 of the Ohio State Constitution and Section 3503.01 of the Ohio Revised Code as against these plaintiffs is in violation of the equal protection clause rights guaranteed under the Fourteenth Amendment of the United States Constitution.