In the Matter of ROBERT J. RABIN et al., Appellants, v. ONONDAGA COUNTY BOARD OF ELECTIONS, Respondent.

Fourth Department, December 2, 1971.

*Frederick Alan Provorny* for appellants.

*New York Civil Liberties Union* for Robert J. Rabin, appellant.

*Eli Gingold, County Attorney (Ronald Crowley* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General (William Kogan* of counsel), for State of New York.

MOULE, J. We have for consideration the question of the constitutionality of section 1 of article II of the New York State Constitution and section 150 of the Election Law under the Fourteenth Amendment to the United States Constitution. Both provide that a citizen of the State of New York is not qualified to vote if he is not a resident " of the county, city, or village for three months next preceding an election."

Petitioners attempted to register in Onondaga County for the November 2, 1971 election, but their applications were refused because they would not have been residents of Onondaga County for three months at the time of the election.

Petitioners state that they have been residents of New York State for more than three months, voted in the 1970 general election, and became residents of Onondaga County during September, 1971. They contend that the requirement of three months' residency in Onondaga County is an arbitrary and unreasonable restriction on their voting franchise and violates the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution. Special Term held that the residency requirement was reasonable and dismissed the petitions.

It has been held that the standard of review on legislation establishing voter qualifications is whether it has a reasonable basis. (*Drueding* v. *Devlin,* 234 F. Supp. 721, affd. 380 U. S. 125; *Matter of Van Berkel* v. *Power,* 16 N Y 2d 37.)

It was held in *Drueding* that the States could impose age, residence and other requirements as long as they did not discriminate by reason of race, color or other invidious ground and were not so unreasonable as to violate the equal protection clause of the Fourteenth Amendment, and that a State law requiring residence in the State for one year and in a county of the State for six months was not unreasonable.

In *Van Berkel* the court passed on the validity of a provision in section 150 of the Election Law which then provided that a naturalized citizen must have been naturalized at least 90 days prior to the day of election and held it constitutional since the States have the power to set voting qualifications and the waiting period was reasonable. However, petitioners argue that the standard of review is not a reasonable basis test but rather

whether the requirement is necessary because of a compelling State interest.

In *Shapiro* v. *Thompson* (394 U. S. 618), it was stated that there are two different standards to be applied in equal protection cases. The traditional rule is that equal protection is denied if the statute is without any reasonable basis, but where a fundamental right is involved, a stricter standard is applied and a compelling State interest must be shown.

The *Shapiro* case involved the validity of statutes which denied welfare assistance to persons who had not been residents of the State for at least one year immediately preceding their application. The court held that the fundamental right of interstate movement was involved and applied the stricter standard of whether there was a compelling State interest. The court found that there was no compelling State interest and that the residency requirement was unconstitutional. In a footnote the court stated: "We imply no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." (*Shapiro* v. *Thompson, supra,* p. 638.)

The Supreme Court has also applied the compelling interest standard in a series of cases involving voting rights. The court held statutes unconstitutional which excluded persons who neither owned nor leased real property nor had children in school from voting in school district elections (*Kramer* v. *Union Free School Dist.,* 395 U. S. 621), which excluded nonproperty owners from voting on municipal revenue bond issues (*Cipriano* v. *City of Houma,* 395 U. S. 701), which excluded residents of a Federal enclave from voting in State elections (*Evans* v. *Cornman,* 398 U. S. 419), and which excluded nonproperty owners from voting on general obligation bond issues (*Phoenix* v. *Kolodziejski,* 399 U. S. 204). In each case the effect of the restriction was to disenfranchise completely a segment of voters who were otherwise qualified by age, literacy and citizenship. These cases do not dictate the application of the compelling interest standard to New York's three-month residency requirement, since it does not permanently exclude a class of persons from voting.

474

We believe *Drueding* v. *Devlin* (*supra*) is good law today, although it has been criticized,[1] and that the test to be applied is whether the three-month residency requirement is reasonable.[2] Applying that standard, we find that the requirement has a reasonable basis. It tends to insure that new members of a community will have a genuine stake in that community and will become familiar with local problems and issues. (*Howe* v. *Brown*, 319 F. Supp. 862.)

Moreover, the Legislature deemed that the three-month residency requirement is necessary to prevent fraud. It not only satisfies the reasonable basis standard but also the stricter standard of compelling State interest. Boards of Election should have the necessary opportunity to investigate the qualifications of those seeking to exercise their franchise. We take judicial notice that in some counties in this State, the number of potential new registrations runs into thousands. It is conceivable that persons, in the absence of a sufficient residency requirement, might vote in several places. Petitioners are entitled to certain constitutional voting rights, but the Legislature must provide that the entire citizenry has the right to a fair, fraud-free election.

The order appealed from should be affirmed.

MARSH, J. P., WITMER, GABRIELLI and CARDAMONE, JJ., concur.

Order unanimously affirmed without costs.