[Crim. No. 23069. Second Dist., Div. Five. Dec. 11, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JACOBO HERNANDEZ RODRIGUEZ, Defendant and Appellant.

**COUNSEL**

Michael Hannon and Antonia H. Rodriguez for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Frederick R. Millar, Jr., and Russell Iungerich, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—By information, defendant was charged in count I with perjury by false affidavit (Pen. Code, § 118) and in count II, with fraudulent registration (Elec. Code, § 220). Defendant pled not guilty, and he personally and all counsel waived trial by jury. It was stipulated that the case be submitted on the preliminary hearing transcript, and all appropriate waivers were secured from defendant and his counsel. Defendant was found guilty of violating Elections Code section 207, which all counsel stipulated was a lesser included offense within Elections Code section 220 than that charged in count II.[1] Defendant was granted probation without formal supervision for a period of one year, the terms and conditions of which included that he pay a $500 fine. Defendant appeals from the judgment and has been released on his own recognizance for the pendency of this appeal.

These facts were adduced at the preliminary hearing: Defendant was born in Mexico and is presently residing in this country as a lawful perma-

---

[1] The parties have apparently agreed that in view of Elections Code section 29001, section 207 states a crime of which defendant is guilty if his "unconstitutional" argument is determined to be without merit.

nent resident alien. On or about May 8, 1971, in the County of Los Angeles, defendant willingly and knowingly signed an affidavit of registration for the purpose of registering to vote. This affidavit was filed with the Los Angeles County Registrar of Voters.

■ The sole contention raised by defendant on appeal is that the limitation of the franchise to citizens works an invidious discrimination against aliens, in violation of their rights secured by the due process and equal protection provisions of the United States Constitution. We disagree.

Initially, we note the narrow issue presented here: Must the State of California extend the right of franchise to permanent resident aliens. We are not asked, nor do we decide, whether other limitations placed upon such aliens residing within the State of California violate the due process and/or equal protection provisions of the Constitution.

■ Classifications based on alienage are subject to close judicial scrutiny. Laws which discriminate on the basis of alienage violate the due process and equal protection provisions of the Fourteenth Amendment unless the state sustains its burden of proving: (1) that the classification reasonably relates to the purpose of the law; (2) that the classification constitutes a necessary means of accomplishing a legitimate state interest; and (3) that the law serves to promote a compelling state interest. (*Raffaelli* v. *Committee of Bar Examiners,* 7 Cal.3d 288 [101 Cal.Rptr. 896, 496 P.2d 1264]; *Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645].) However, with respect to the exercise of the franchise, the United States Supreme Court has recently expressed the view that citizenship does constitute a permissible criterion for determining who shall be allowed to vote. (*Sugarman* v. *Dougall* (1973) 413 U.S. 634, 646-649 [37 L.Ed.2d 853, 862-864, 93 S.Ct. 2842].) Because of *Sugarman's* particular relevance to the matter here at issue, we quote at length from the pertinent language of the court: "Neither do we hold that a State may not, in an appropriately defined class of positions, require citizenship as a qualification for office. Just as 'the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections,' *Oregon* v. *Mitchell,* 400 U.S. 112, 124-125 [27 L.Ed.2d 272, 91 S.Ct. 260] (1970) (footnote omitted) (opinion of Black, J.); see *id.,* at 201 [27 L.Ed.2d 272] (opinion of Harlan, J.), and *id.,* at 293-294 [27 L.Ed.2d 272] (opinion of Stewart, J.), '[e]ach State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen.' *Boyd* v. *Thayer,* 143 U.S. 135, 161 [36 L.Ed. 103, 12 S.Ct. 375] (1892). See *Luther* v. *Borden,* 7 How. 1, 41 [12 L.Ed. 581] (1849); *Pope* v. *Williams,* 193 U.S. 621, 632-633 [48

L.Ed. 817, 24 S.Ct. 573] (1904). Such power inheres in the State by virtue of its obligation, already noted above, 'to preserve the basic conception of a political community.' *Dunn* v. *Blumstein,* 405 U.S. at 344 [31 L.Ed.2d 274]. *And this power and responsibility of the State applies not only to the qualifications of voters,* but also to persons holding state elective or important nonelective executive, legislative, and judicial positions, for officers who participate directly in the formulation, execution, or review of broad public policy perform functions that go to the heart of representative government. There, as Judge Lumbard phrased it in his separate concurrence, is 'where citizenship bears some rational relationship to the special demands of the particular position.' 339 F.Supp., at 911.

"We have held, of course, that such state action, particularly with respect to voter qualifications, is not wholly immune from scrutiny under the Equal Protection Clause. See, for example, *Kramer* v. *Union School District,* 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886] (1969). But our scrutiny will not be so demanding where we deal with matters resting firmly within a State's constitutional prerogatives. *Id.,* at 625 [23 L.Ed.2d 583]; *Carrington* v. *Rash,* 380 U.S. 89, 91 [13 L.Ed.2d 675, 85 S.Ct. 775 (1965). This is no more than a recognition of a State's historical power to exclude aliens from participation in its democratic political institutions, *Pope* v. *Williams,* 193 U.S., at 632-634 [48 L.Ed. 817]; *Boyd* v. *Thayer,* 143 U.S., at 161 [36 L.Ed. 103], and a recognition of a State's constitutional responsibility for the establishment and operation of its own government, as well as the qualifications of an appropriately designated class of public office holders [fn. omitted]. Const Art IV, § 4; Const Amend X; *Luther* v. *Borden, supra;* see *In re Duncan,* 139 U.S. 449, 461 [35 L.Ed. 219, 11 S.Ct. 573] (1891). *This Court has never held that aliens have a constitutional right to vote . . . under the Equal Protection Clause. Indeed, implicit in many of this Court's voting rights decisions is the notion that citizenship is a permissible criterion for limiting such rights.* [Citations.]" (Italics added.)

The decision in *Sugarman* thus evidences the view that the validity of classifications based upon alienage may turn upon whether the classification interposes itself between the alien and social and/or economic rights (*Graham* v. *Richardson,* 403 U.S. 365 [29 L.Ed.2d 534, 91 S.Ct. 1848] (public welfare benefits); *Shapiro* v. *Thompson,* 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322] (interstate travel); *Truax* v. *Raich,* 239 U.S. 33 [60 L.Ed. 131, 36 S.Ct. 7] (right to earn a livelihood), and where the classification is interposed between the alien and the political processes. We recognize, of course, that the holding in *Sugarman* is that the broad denial of an alien's right to employment, with little if any relation to the state's legitimate interest, is a violation of the equal protection clause of the

Fourteenth Amendment. However, the decisions are pregnant with the intendment that where political rights are concerned, citizenship is a valid criterion by which the state may measure the right to participate in the political processes.[2]

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 7, 1974.

---

[2]See, e.g., *Dunn* v. *Blumstein*, 405 U.S. 330, 336 [31 L.Ed.2d 274, 280, 92 S.Ct. 995]: "In decision after decision, this Court has made clear that a *citizen* has a constitutionally protected right to participate in elections on an equal basis with other *citizens* in the jurisdiction." (Italics added.) *Burns* v. *Richardson*, 384 U.S. 73, 92 [16 L.Ed.2d 376, 390-391, 86 S.Ct. 1286]: "Neither in *Reynolds* v. *Sims* nor in any other decision has this Court suggested that the states are required to include aliens . . . in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause must be measured. The decision to include or exclude any such group involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere." *Harper* v. *Virginia State Bd. of Elections*, 383 U.S. 663, 668 [16 L.Ed.2d 169, 173, 86 S.Ct. 1079]: "The principle that denies the State the right to dilute a *citizen's* vote on account of his economic status or other such factors by analogy bars a system which excludes those unable to pay a fee to vote or who fail to pay." (Italics added.)

The principle that citizenship is a permissible criterion upon which the allowance of the franchise may be based also finds expression in the provisions of the United States Constitution relative to voting: See, e.g., the Fifteenth Amendment: "Section 1. The right of *citizens* of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude"; the Nineteenth Amendment: "The right of *citizens* of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." The Twenty-fourth Amendment: "Section 1. The right of *citizens* of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." The Twenty-sixth Amendment: "Section 1. The right of *citizens* of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." [All italics added.]