[Civ. No. 41657. Second Dist., Div. Five. Apr. 24, 1974.]

ADELINA PADILLA et al., Plaintiffs and Appellants, v.
JAMES S. ALLISON, as Registrar-Recorder, etc., et al.,
Defendants and Respondents.

## COUNSEL

Terry J. Hatter Jr., Peter D. Roos, Philip L. Goar, Joel I. Edelman and Ronald L. Sievers for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, Henry G. Ullerich, Deputy Attorney General, John D. Maharg, County Counsel, Edward H. Gaylord and Joe Ben Hudgens, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**STEPHENS, J.**—Appellants brought an action in the superior court in which they sought a declaratory judgment that California's requirement of United States citizenship as a prerequisite for voting is, as applied to them, a denial of the equal protection of the law. The trial court sustained respondents' demurrers without leave to amend on the ground that appellants' complaint failed to state a cause of action. Appellants appeal from the order of dismissal.

Appellants are permanent resident aliens of the United States. They speak, read, and write Spanish, but do not speak, read, or write English. Appellants meet all the requirements for registration as voters in this state except the requirement of the California Constitution, article II, section 1, that a voter be a citizen of the United States. Appellants allege that they meet all statutory requirements for naturalization except the requirement of ability to speak, read, and write the English language.[1]

---

[1]The requirements for naturalization may be summarized as follows:
1. Lawfully admitted for permanent residence at least five years prior to application. (8 U.S.C. § 1427, subd. (a)(1));
2. Good moral character. (8 U.S.C. § 1427, subd. (a)(3));

■ As posed by appellants, "The only issue on this appeal is whether the appellants' complaint states sufficient facts which would, if true, entitle appellants to a declaratory judgment that Article II, Section 1, of the California Constitution, insofar as it makes United States citizenship a prerequisite for voting, denies appellants' rights guaranteed them by the Constitution of the United States." Respondent registrar-recorder "prefers a more direct and substantive statement [of the issue]: 'Does any provision of the Constitution of the United States prohibit the State of California, in its Constitution, from requiring California voters to be United States Citizens?'"

The issues as posed by both parties have recently been determined in *People* v. *Rodriguez,* 35 Cal.App.3d 900 [111 Cal.Rptr. 238].

Appellants predicate their contentions upon the Fourteenth Amendment's equal protection clause, but, as was recently stated by the Supreme Court in the case of *Sugarman* v. *Dougall,* 413 U.S. 634, 648-649 [37 L.Ed.2d 853, 863-864, 93 S.Ct. 2842]:[2] "This Court has never held that aliens have a constitutional right to vote . . . under the Equal Protection Clause."[3] Congress, not the state, has the sole power to prescribe limitations and qualifications which it may deem necessary in the field of nationality legislation. (*Takahashi* v. *Fish Comm'n,* 334 U.S. 410 [92 L.Ed. 1478, 68 S.Ct. 1138]; *Terrace* v. *Thompson,* 263 U.S. 197, 220 [68 L.Ed. 255, 276, 44 S.Ct. 15]; *Purdy & Fitzpatrick* v. *State of California,*

---

3. Knowledge and understanding of the history, principles and form of government of the United States. (8 U.S.C. § 1423, subd. (2));

4. Not an anarchist or a member of certain designated organizations. (8 U.S.C. § 1424);

5. Ability to read, write and speak words in ordinary usage in the English language. (8 U.S.C. § 1423, subd. (1).)

[2] Appellants attempt to distinguish the language in *Sugarman* v. *Dougall* (upon which we rested our decision in *Rodriguez*) by restricting its application to the issue of holding office. We are not persuaded. Holding office and determining who shall hold office are merely concomitant aspects of the exercise of the same right—that of partaking in the political process. "Logic dictates a result which equates the right to vote with the right to seek public office. Any citizen qualified to vote in a jurisdiction should be entitled to seek public office in that jurisdiction. . . . If he has the knowledge essential to vote intelligently, in general he will have the knowledge to serve his community in elective office. However, if his fellow citizens believe he lacks the capacity to serve, their remedy is to reject his candidacy at the ballot box." (*Thompson* v. *Mellon,* 9 Cal.3d 96, 108 [107 Cal.Rptr. 20, 507 P.2d 628] (concurring opinion by Justice Mosk).)

[3] The precise issue has not arisen before the United States Supreme Court. The propriety of excluding aliens from the voting franchise was recognized by this court in *People* v. *Rodriguez, supra* (p. 904), and expressions in numerous state and federal opinions limiting the franchise to citizens have been so frequent that they cannot be dismissed as unconsidered as illustrative dicta. (See *Otsuka* v. *Hite,* 64 Cal.2d 596, 605 [51 Cal.Rptr. 284. 414 P.2d 412].)

71 Cal.2d 566, 572-576 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) Clearly, the state could not deny the franchise to naturalized citizens or to those who acquire their citizenship derivatively, and at the same time allow native-born citizens to vote. (*Schneider* v. *Rusk*, 377 U.S. 163 [12 L.Ed.2d 218, 84 S.Ct. 1187].)[4] Thus, the provisions of the Election Code which extend the franchise to naturalized citizens and to those who obtain their citizenship derivatively merely express the Legislature's determination that *all* citizens of the United States who satisfy the California residency requirements may vote.

While California could not deny the franchise to appellants if they were citizens even though they cannot read or write English (*Castro* v. *State of California*, 2 Cal.3d 223 [85 Cal.Rptr. 20, 466 P.2d 244]), it is not true that California is required to look behind the fact of alienage to determine the reason for it. While the states could extend the franchise to aliens, there is no *obligation* to do so.[5] (*Pope* v. *Williams*, 193 U.S. 621, 632-633 [48 L.Ed. 817, 722-823, 24 S.Ct. 573].)

As we specifically held in *Rodriguez*, we perceive no reason to require the state to grant the voting franchise to a class of persons who are not required to be enfranchised under the Fourteenth Amendment. Since the Legislature is not required to enfranchise aliens, the prerequisites for federal citizenship, which are solely of federal concern, cannot be said to invalidate a state legislative determination that aliens not be allowed to vote. Just as an alien does not have a constitutional right to become a citizen (*Rogers* v. *Bellei*, 401 U.S. 815, 830-831 [28 L.Ed.2d 499, 509-510, 91 S.Ct. 1060]; cf. *Kleindienst* v. *Mandel*, 408 U.S. 753, 762 [33 L.Ed.2d 683, 691, 92 S.Ct. 2576]), so too do the aliens here lack a constitutional right to participate in the political process.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

---

[4]"Under our Constitution, a naturalized citizen stands on an equal footing with the native citizen in all respects save that of eligibility to the presidency." (*Luria* v. *United States*, 231 U.S. 9, 22 [58 L.Ed 101, 105, 34 S.Ct. 10].)

[5]During this country's first 100 years, many states allowed aliens to exercise the franchise. (See e.g., Aylsworth, *The Passing of Alien Suffrage* (1931) 25 Am.Pol.Sci.Rev. 114; Porter, A History of Suffrage in the United States, p. 113.)